## THE TRAVELERS INSURANCE CO. *v.*
## NATIONAL FARMERS UNION PROPERTY AND
## CASUALTY CO. ET AL

5-5900                                          480 S.W. 2d 585

Opinion delivered May 22, 1972

*Terral, Rawlings, Matthews & Purtle,* for appellant.

*Wright, Lindsey & Jennings* and *Catlett & Henderson,* for appellees.

John A fogleman, Justice, This appeal presents two basic questions. They are: (1) Is the particular clause in the uninsured motorist coverage of the liability policy issued by National Farmers Union Property and Casualty Company (hereafter called NFU) to Calvin E. McCord, deceased, providing that any amount payable under that coverage because of bodily injury shall be reduced by the amount paid and the present value of all amounts payable on account of such injury under any workmen's compensation law valid? (2) Is the workmen's compensation carrier for Calvin McCord's employer entitled to subrogation against uninsured motorist benefits payable to McCord's administratrix? We answer both questions in the negative.

McCord was killed while performing his duties as an employee of Mitchell Machinery Company when he was struck by a vehicle driven by Kenneth Green, an uninsured motorist. Travelers Insurance Company had paid $3,558.-82 in workmen's compensation benefits to McCord dependents at the time the judgment appealed from was rendered in the circuit court. It was stipulated that a sum in excess of $10,000 was payable under the workmen's compensation coverage. It was also stipulated that McCord's administratrix was entitled to recover a sum in excess of $10,-000 from the uninsured motorist.

Denise McCord, as administratrix of McCord's estate, filed a suit against NFU seeking to recover the $10,000 uninsured motorist coverage, without any deduction for workmen's compensation benefits. Travelers Insurance Company intervened seeking subrogation by virtue of its workmen's compensation payments. The circuit court,

upon motions for summary judgment by NFU and Mc-Cord's administratrix, dismissed Travelers' intervention on the ground that it was not entitled to subrogation, gave NFU credit for all workmen's compensation payments made by Travelers up to the date of the judgment, and rendered judgment for the administratrix against NFU for the balance of the uninsured motorist coverage. All parties have appealed.

The circuit judge made a painstaking and thorough analysis of the possible results which might be reached on these questions of first impression in this jurisdiction. We agree with him that the intervention of Travelers should have been dismissed, but we do not agree that NFU was entitled to any credit for workmen's compensation payments.

Travelers contends that it is entitled to subrogation under Ark. Stat. Ann. § 81-1340 (a) (Repl. 1960). Principal reliance is placed upon § 81-1340 (a) (1), wherein it is provided that the making of a claim for workmen's compensation "shall not affect the right of the employee, or his dependents, to make claim or maintain an action in court against any third party for such injury" and that when the compensation carrier joins in the action, it shall have a lien upon two-thirds of the net proceeds. A literal reading of these words without further exploration of the section might lead one to the conclusion that it was the intent of the act to provide a lien in favor of the compensation carrier on any amounts the employee or his dependents were entitled to recover from any source because of the employee's injury. We have held, however, that uninsured motorist coverage is a form of accident or indemnity insurance. *Farm Bureau Mut. Ins. Co of Arkansas* v. *Mitchell*, 249 Ark. 127, 258 S.W. 2d 395; *MFA Mutual Ins. Co.* v. *Bradshaw*, 245 Ark. 95, 431 S.W. 2d 252. If, under the broad general language of § 81-1340 (a) (1), the uninsured motorist insurer is a "third party" against whom the compensation carrier may join the injured employee or his dependents in asserting a claim because of the injury, there would be no reason why the employee's health and accident and hospital insurance proceeds would not

also be subject to a lien in favor of an intervening workmen's compensation carrier. We cannot believe that the words "third party" are subject to any such broad interpretation. Examination of the remainder of this section of the statute makes it quite clear that a "third party" is one against whom an "action for damages by reason of injury" or an "action in tort" may be brought by the employee or his dependents. § 81-1340 (a) (2) and (b).

We cannot accept the theory that the recovery on the uninsured motorist coverage is a tort recovery subject to the lien just because liability depends upon a tortious injury. This would mean that the coverage is a type of liability insurance on the uninsured motorist—a premise we have rejected. *Farm Bureau Mut. Ins. Co. of Arkansas* v. *Mitchell,* supra. An action against the carrier of uninsured motorist coverage is in no sense an action in tort. It is clearly an action upon a contract by the insured as one of the contracting parties against the insurer as the other. See *Farm Bureau Mut. Ins. Co. of Arkansas* v. *Mitchell,* supra. A workmen's compensation carrier has no more right under the subrogation statute to benefit from this type of insurance which a covered employee elects to take at his own expense than it would from the proceeds of health, accident or hospital insurance. We find the language of a New York court particularly applicable here. In *Commissioners of the State Insurance Fund* v. *Miller,* 4 App. Div. 2d 481, 166 N.Y.S. 2d 777 (1957) that court said:

> The Fund argues that this makes no difference, that it has a lien on all tort recoveries, and the defendant's insurer has agreed to stand in the shoes of the tortfeasor. Defendant's insurer cannot, however, be deemed the *alter ego* of the tortfeasor. It does not insure the tort-feasor against liability, it insures its policyholder against the risk of inadequate compensation for his compensable injuries. Its liability to defendant is contractual, although premised in part upon the contingency of a third party's tort liability.

> The compensation carrier has a right to expect an injured employee to pursue whatever remedies he may

have against a third-party tort-feasor, and if the employee fails to do so, the compensation carrier may protect its lien by pursuing his remedies for him [Workmen's Compensation Law, § 29 (2).] It has no right to expect an employee to supplement his common law remedies and the compensation carrier's statutory lien, by purchasing his own insurance. If the employee does choose to expend his own funds to provide additional protection for himself, whether by paying for an accident and health policy, or by having a Medical Payments or Uninsured Drivers Benefits clause added to his liability policy, the compensation carrier does not thereby acquire additional rights. It does not become a third-party beneficiary of the employee's insurance contract. Nor is it subrogated to the employee's contractual rights if the employee fails to assert them.

See also, *Rhodes* v. *Automotive Ignition Co.*, 218 Pa. Super 281, 275 A. 2d 846 (1971); 12 Couch on Insurance (Second Edition) 585, § 45:650. Since Travelers had no right of subrogation, it had no right to intervene.

The trial court's holding allowing credit for workmen's compensation is based upon a portion of a policy "condition" reading:

6.  Limits of liability:
(a) The limit of liability stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages, *** because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the schedule as applicable to "each accident" is the total limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident, (b) any amount payable under the terms of this endorsement because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by ***
   (2) the amount paid and the present value of all amounts payable on account of such bodily injury

under any workmen's compensation law, disability benefits law or any similar law.

NFU is entitled to credit under this clause unless it is void as contrary to public policy or is contrary to the uninsured motorist act. Ark. Stat. Ann. § 66-4003 (Repl. 1966) reads:

> No automobile liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto, in not less than limits described in section 27 of Act 347 of 1953 [§ 75-1427], as amended, under provisions filed with and approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage. [Acts 1965, No. 464, § 1, p. 1570.]

Ark. Stat. Ann. § 75-1427 (Repl. 1957 and Supp. 1971) requires security subject to a limit, exclusive of interest and costs, for not less than $10,000 because of bodily injury to or death of one person in any one accident, subject to said limit for one person, to a limit of not less than $20,000 because of bodily injury to or death of two or more persons in any one accident. It would appear that, in this policy for the statutory amounts, the condition stated would on its face amount to a reduction of the stated policy limits.

There is a division of authority on the question of the validity of such clauses. They have been held void in *Standard Accident Ins. Co.* v. *Gavin,* 196 So. 2d 440, 24 A.L.R. 3d 1366 (Fla. 1967); *Southeast Title & Insurance Co.* v. *Austin, 202 So. 2d 179 (Fla. 1967); Peterson* v. State *Farm*

*Mutual Automobile Ins. Co.*, 238 Ore. 106, 393 P. 2d 651 (1964); *Preferred Risk Mutual Insurance Co.* v. *Holmes*, 287 Ala. 251, 251 So. 2d 213 (1971). Contra, *Jarett* v. *Allstate Ins. Co.*, 209 Cal. App. 2d 804, 26 Cal Rptr. 231 (1962); *Ullman* v. *Wolverine Insurance Co.*, 105 Ill. App. 2d 408, 244 N.E. 2d 827 (1969), *Hackman* v. *American Mutual Liability Insurance Co.*, 110 N. H. 87, 261 A. 2d 433 (1970) (where same carrier had both coverages).

This clause has been held void by two eminent jurists in separate Arkansas Federal District Courts because the purpose of the statute was to provide a basic minimum coverage against the actions of financially irresponsible motorists. See *Carter* v. *Saint Paul Fire & Marine Insurance Company*, 283 F. Supp. 384 (1968), aff'd sub nom *Vaught* v. *State Farm Fire & Cas. Co.*, 413 F. 2d 539 (8th Cir. 1960); *Jones* v. *Morrison*, 284 F. Supp. 1016 (1968). We find the reasoning of the courts which have held this clause void to be persuasive. We have held a "medical payments" deduction from the recovery to be in derogation of the statute. *Heiss, Executrix* v. *Aetna Cas. & Sur. Co.*, 250 Ark. 474, 465 S.W. 2d 699 (where uninsured motorist's premiums would be increased if medical coverage was in addition to uninsured motorist coverage). There is no indication that there is any premium differential here favoring an insured covered by workmen's compensation over one who is not.

It is true that the parties are free to contract upon any terms not contrary to public policy or the terms of our statutes. *MFS Mutual Ins. Co.* v. *Bradshaw*, 245 Ark. 95, 431 S.W. 2d 252. It is also true that the particular policy provision has been approved by our Insurance Commissioner. We do not believe, however, that it was the intention of the General Assembly that the coverage provided be subject to reduction of the amount the insurer would be required to pay in a manner discriminatory against persons protected by workmen's compensation coverage, as would result if we held the clause in this policy valid.

We cannot hold this particular provision valid simply because it was approved by the Insurance Commis-

sioner. We cannot believe that the General Assembly intended that the coverage for which the insured paid his premium could be reduced simply because this official approved a policy provision that would have this effect. We do not find any indication that the legislative branch of the government intended to vest such broad authority in the Insurance Commissioner. We agree with the United States District Court for the Eastern District of Arkansas and the Supreme Court of Oregon that such action is beyond the scope of the authority of the Commissioner. *Carter* v. *St. Paul Fire & Marine Ins. Co.*, supra; *Peterson* v. *State Farm Mutual Automobile Ins. Co.*, supra. See also, *State Farm Mutual Automobile Ins. Co.* v. *Barnard*, 115 Ga. App. 857, 156 S.E. 2d 148 (1967). Furthermore, the argument that the public policy of Arkansas was declared in *MFA* v. *Wallace*, 245 Ark. 230, 431 S. W. 2d 742, does not persuade us to allow the credit. There the clause was an "other insurance" limitation and the two policies were issued by the same company. We said that it was not the legislative intention that the insured be afforded greater insurance protection against the uninsured motorist than would have been available had he been injured by an operator with a policy containing the minimum statutory limits required by Ark. Stat. Ann. § 75-1427. We do not equate the right of a workmen's compensation carrier to subrogation against a tortfeasor's liability carrier with the asserted right of the insured's own indemnity carrier to reduce the amount of its coverage by the amount of benefits received from a collateral source,[1] in spite of the fact that the insured had paid a premium for the full amount of the prescribed limits. Yet, this is precisely what we would have to do in order to sustain NFU's argument and the trial court's judgment. To do so would result in giving greater coverage to one who was not covered by workmen's compensation than one who was. The uninsured motorist legislation was passed long after adoption of the Workmen's Com-

---

[1]For other cases holding that indemnity from collateral sources does not diminish the amount an injured party is entitled to recover from one liable to him on account of his injury or loss, see *Freeman* v. *Reeves*, 241 Ark. 867, 410 S.W. 2d 740; *Manila School Dist.* v. *Sanders*, 226 Ark. 270, 289 S.W. 2d 529. For a case where the collateral source was workmen's compensation benefits, see *Swindle* v. *Thornton*, 229 Ark. 437, 316 S.W. 2d 202.

pensation Act. When we consider the basic purposes of the latter act, our belief that the legislature did not intend that the Uninsured Motorist Act be the means of discrimination against working people protected under the workmen's compensation laws is strengthened. Analogy of the subrogation right of the compensation carrier to the right of the indemnity carrier to reduce its liability is inappropriate. The subrogation right is for the protection of the compensation carrier. The right claimed by NFU would simply provide it with a windfall in the case of one covered by the workmen's compensation laws. The purpose of the Uninsured Motorist Act was to protect the insured, not the insurer.

We further doubt that there was any intention that the covered employee be afforded greater indemnity by his own insurance carrier against the hazards of injury by an uninsured motorist while following recreational pursuits, for example, than he would have while about his daily labors for his employer. We certainly do not believe that there was any legislative intent that the covered employee's dependents be deprived of any protection by his uninsured motorist coverage, if workmen's compensation benefits paid and the commuted value of payments to be made should exceed the minimum indemnity required by Ark. Stat. Ann. § 66-4003. Yet if the credit clause were permitted to stand, this result could be reached in some cases.

We affirm the judgment insofar as it relates to the dismissal of Travelers' intervention, but reverse the judgment allowing NFU credit for workmen's compensation benefits paid, and remand the cause to the circuit court for further proceedings consistent with this opinion.