ROSEMARY BRUNMEIER, TRUSTEE FOR THE HEIRS AND NEXT OF KIN OF BRIAN BELLRICHARD, AND ANOTHER v. FARMERS INSURANCE EXCHANGE.

208 N. W. 2d 860.

June 15, 1973—No. 43379.

*Murnane, Murnane, Battis, deLambert & Conlin* and *Thomas J. Battis,* for appellant.

*Blethen, Ogle, Gage & Krause* and *Bailey W. Blethen*, for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, and Schultz, JJ.

OTIS, JUSTICE.

The issue raised on this appeal is whether a provision in an automobile insurance policy which reduces uninsured-motorist coverage by amounts paid for workmen's compensation is contrary to public policy. The trial court held the provision invalid and we affirm.

Plaintiff is a trustee for Brian Bellrichard who was killed in a two-car collision with an uninsured motorist, Max Naiman, on November 20, 1968. In an action brought by the trustee against Naiman for death by wrongful act, she secured a judgment for $35,000. Decedent at the time of his death was covered by an automobile insurance policy issued by defendant, Farmers Insurance Exchange, which afforded uninsured-motorist coverage in the amount of $10,000. Because his death arose out of his employment, his widow and children will receive weekly workmen's compensation benefits totaling $25,000.

Since the compensation benefits exceed the uninsured-motorist coverage, the defendant insurer denies liability under Coverage C, the uninsured-motorist provisions, by virtue of the limitation contained in Paragraph (c) of Part II, which provides as follows:

"Any loss payable to any person under the terms of this Part II shall be reduced by (1) the amount paid and the present value of all amounts payable to him under any workmen's compensation law, disability benefits law or any similar law, and (2) the amounts paid or due to be paid under any valid and collectible automobile medical expense insurance available to the insured."

The policy also provides that the proceeds shall not inure directly or indirectly to the benefit of any workmen's compensation or disability benefits carrier.

1. The trial court held that the insurer was liable on two theories: First, that the words "any loss payable" referred to loss payable by the tortfeasor in the sum of $35,000. Hence, the court reasoned, the reduction of $25,000 representing compensation payments left $10,000 payable to the trustee. This was the construction put on a similar provision in Michigan Mutual Lia. Co. v. Mesner, 2 Mich. App. 350, 139 N. W. 2d 913 (1966). However, we do not read the policy in this manner and find the views expressed in Jarrett v. Allstate Ins. Co. 209 Cal. App. 2d 804, 811, 26 Cal. Rptr. 231, 235 (1962), more persuasive. There, the California District Court of Appeals held that the words "loss payable" were not ambiguous or uncertain but had obvious reference to the loss which is payable to the insured under the terms of the policy and did not refer to the loss which he suffered at the hands of the uninsured motorist. As applied to the policy before us, the words "[a]ny loss payable to any person under the terms of this Part II shall be reduced" by workmen's compensation benefits clearly apply to the $10,000 policy limits on uninsured-motorist coverage since that is the maximum amount which, under any circumstances, could be recovered "under the terms of this Part II." We do not find the provisions ambiguous and adopt the position of the California court.

2. The second theory upon which the trial court's decision was based, involving the validity of that part of the policy which reduces coverage by the amount of workmen's compensation benefits paid to the insured or his heirs, presents a more difficult question. The issue is governed by the provisions of the Minnesota statutes dealing with uninsured-motorist coverage, with the Safety Responsibility Act, and with the subrogation rights of an employer under the Workmen's Compensation Act. The authorities are not in accord in construing similar provisions in other states. Nevertheless, the weight of authority, and what appears to us to be the intent of the legislature in this state, compel a holding that the reduction of benefits payable under the insurance policy to the extent any workmen's compensation pay-

ments are received is not in accord with the purpose of our statute.

The accident which gave rise to this claim occurred in 1968. The statute which applied at that time was Minn. St. 1967, § 72A.149, subd. 1.[1] That statute makes mandatory in every automobile liability policy so-called uninsured-motorist coverage in the minimum amounts prescribed by Minn. St. 170.25, subd. 3, of the Safety Responsibility Act. The minimum automobile liability coverage required by that act for proof of financial responsibility is $10,000 for injury or death of one person and $20,000 for any one accident.

Our problem is compounded by the fact that we believe it was the intention of the legislature to confer on automobile liability policyholders benefits against uninsured motorists in no less

---

[1] Minn. St. 1967, § 72A.149, subd. 1, which has been amended and renumbered as part of Minn. St. 65B.22, provided as follows: "No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, under provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles, including colliding motor vehicles whose operators or owners are unknown or are unidentifiable at the time of the accident, and whose identity does not become known thereafter, because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject in writing such coverage; and provided further that, unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer. The policy limits of the coverage required to be offered by this section shall be as set forth in Minnesota Statutes 1965, Section 170.25, Subdivision 3, until January 1, 1971; thereafter, at the option of the insured, the uninsured motorist limits shall be equal to those provided in the policy of bodily injury liability insurance of the insured or such lesser limits as the insured elects to carry."

amounts than such policyholders would have realized against insured motorists. If, in the instant case, the tortfeasor, Max Naiman, had been insured, the decedent's employer or compensation carrier would have had a right of subrogation for the full amount of the $10,000 under Minn. St. 1967, § 176.061.[2] The policy in the case before us expressly provides that it shall not inure to the benefit of any workmen's compensation carrier, thus attempting to prevent a claim for subrogation.

There is sound authority for the proposition that no subrogation occurs against an injured party's own liability carrier because the policyholder's rights are contractual and do not arise from a tort. Commissioners of State Ins. Fund v. Miller, 4 App. Div. 2d 481, 166 N. Y. S. 2d 777 (1957); Travelers Ins. Co. v. National Farmers Union Property & Cas. Co. 252 Ark. 624, 480 S. W. 2d 585 (1972); 12 Couch, Cyclopedia of Insurance Law (2 ed.) § 45:650. In the instant case, the compensation carrier has not asserted a right to subrogation against the employee's liability carrier, the defendant herein. Consequently, we recognize that the plaintiff will be entitled to recover both the proceeds of the uninsured-motorist coverage and the statutory benefits under the Workmen's Compensation Act without any setoff. Nevertheless, we find nothing in the uninsured-motorist statute which suggests an intent to prefer the liability carrier to the policyholder if there is to be a windfall to one or the other. This conclusion is in accord with the views expressed in Van Tassel v. Horace Mann Mutual Ins. Co. 296 Minn. 181, 207 N. W. 2d 348 (1973); In re Pleitgen v. Farmers Ins. Exchange, 296 Minn. 191, 207 N. W. 2d 535 (1973); and Ehlert v. Western Nat. Mutual Ins. Co. 296 Minn. 195, 207 N. W. 2d 334 (1973).

Although, as we have indicated, the majority of jurisdictions have held invalid provisions for setoffs arising out of workmen's

---

[2] That statute has now been amended to permit the injured employee or his dependents to retain one-third of the recovery against the tortfeasor. L. 1969, c. 199, § 2.

compensation payments,[3] two decisions holding to the contrary deserve comment. Hackman v. American Mutual Lia. Ins. Co. 110 N. H. 87, 261 A. 2d 433 (1970), construed an uninsured-motorist's policy with a workmen's compensation provision similar to the one under consideration. However, in the Hackman case, the liability carrier was the same as the compensation carrier. The New Hampshire court reasoned that the statute was not intended to confer greater benefits on an injured party with uninsured-motorist coverage than he would realize from an insured motorist. Since the court was of the opinion that the compensation carrier in each instance would have a lien or subrogation right to realize out of the proceeds payable to the injured party, in the amount the compensation carrier paid in benefits, the court found no impediment to enforcing the policy provision permitting compensation payments to be in reduction of the face amount of the policy. For these reasons, the court concluded (110 N. H. 91, 261 A. 2d 436) : "Essentially any dispute over the right of a liability carrier to thus limit its liability lies between the compensation carrier and the liability carrier and does not involve the plaintiff."[4]

---

[3] Peterson v. State Farm Mutual Auto. Ins. Co. 238 Ore. 106, 393 P. 2d 651 (1964); Standard Accident Ins. Co. v. Gavin, 184 So. 2d 229, 24 A. L. R. 3d 1359 (Fla. App. 1966); Southeast Title & Ins. Co. v. Austin, 202 So. 2d 179 (Fla. 1967); Stephens v. Allied Mutual Ins. Co. 182 Neb. 562, 571, 156 N. W. 2d 133, 139 (1968); Carter v. St. Paul Fire & Marine Ins. Co. 283 F. Supp. 384 (E. D. Ark. 1968); Aldcroft v. Fidelity & Cas. Co. of New York, 106 R. I. 311, 259 A. 2d 408 (1969); Booth v. Seaboard Fire & Marine Ins. Co. 431 F. 2d 212 (8 Cir. 1970); State Farm Mutual Auto. Ins. Co. v. Cahoon, 287 Ala. 462, 252 So. 2d 619 (1971); Preferred Risk Mutual Ins. Co. v. Holmes, 287 Ala. 251, 251 So. 2d 213 (1971); Sullivan v. Doe, 159 Mont. 50, 495 P. 2d 193 (1972); Travelers Ins. Co. v. National Farmers Union Property & Cas. Co. 252 Ark. 624, 480 S. W. 2d 585 (1972). See, also, Annotation, 24 A. L. R. 3d 1369.

[4] The New Hampshire court seems to have assumed that the compensation carrier was entitled to subrogation for benefits paid by the injured party's liability carrier since the court did not discuss that issue.

The Illinois Supreme Court came to a similar conclusion in Ullman v. Wolverine Ins. Co. 48 Ill. 2d 1, 269 N. W. 2d 295 (1970). The Illinois statute, like the Minnesota statute, neither prohibited nor authorized a reduction for workmen's compensation benefits. In holding that the reduction was valid, a majority of a divided court reasoned that the injured party's recovery against an insured tortfeasor would have been reduced by the compensation carrier's subrogation claim, and consequently a provision in the uninsured-motorist portion of the injured party's automobile insurance policy which had the same effect did not deprive him of anything he would have received from an insured tortfeasor.

While there is logic in the reasoning of the New Hampshire and Illinois courts, the question of subrogation, as we see it, is one which concerns only the employee and the employer's compensation carrier and not the employee's liability carrier. As we have indicated, we are of the opinion that the Minnesota statute intends to provide the injured party with no less benefits than those to which he would be entitled had the tortfeasor been insured. Obviously, in the ordinary situation, the tortfeasor's liability carrier would have no right to deduct workmen's compensation from an award made on behalf of an injured party, as that is strictly a matter between the injured employee and his compensation carrier. This view is supported by Peterson v. State Farm Mutual Auto. Ins. Co. 238 Ore. 106, 393 P. 2d 651 (1964); Booth v. Seaboard Fire & Marine Ins. Co. 431 F. 2d 212 (8 Cir. 1970); and Travelers Ins. Co. v. National Farmers Union Property & Cas. Co. *supra*. The Oregon court was of the opinion that the workmen's compensation reduction was not authorized by the statute and that the question of duplicated recovery was a policy matter for the legislature to resolve. In the Travelers Insurance Co. case, the Arkansas court held that, because the injured employee's claim was based on a contract and not on a tort, the workmen's compensation carrier had no lien or subrogation rights. In that posture, the court found that the reduction by the

amount of the compensation benefits was not justified on the grounds it equated the net benefits to the injured party with those he would realize in an ordinary tort claim where subrogation rights could be asserted. In reaching its decision, the court observed that the employee had secured his own liability insurance and had paid his own premiums and hence the compensation carrier had no claim to the proceeds of the uninsured-motorist coverage. The court noted the split of authority on whether provisions of this kind are contrary to public policy. To allow the reduction, the court decided, would be to confer greater benefits on those not covered by workmen's compensation insurance than on those who are covered. The court then concluded (252 Ark. 632, 480 S. W. 2d 591):

"* * * The subrogation right is for the protection of the compensation carrier. The right claimed by [plaintiff's own liability carrier] would simply provide it with a windfall in the case of one covered by the workmen's compensation laws. The purpose of the Uninsured Motorist Act was to protect the insured, not the insurer."

Finally, the issue is thoroughly considered by the United States Court of Appeals of the 8th circuit in Booth v. Seaboard Fire & Marine Ins. Co. 431 F. 2d 212, 217 (1970). There, the court was applying the Nebraska law as it had been enunciated in Stephens v. Allied Mutual Ins. Co. 182 Neb. 562, 156 N. W. 2d 133 (1968). The trial court had held valid the provision deducting workmen's compensation benefits to prevent a windfall to the plaintiff. The court of appeals noted that invalidating the reduction of benefits was not a windfall to the injured party but that a windfall to the uninsured-motorist carrier occurred if that provision were enforced. The injured party was entitled to compensation as a condition of employment, and his employer had paid premiums for that purpose, just as the injured party himself had paid a premium for the uninsured-motorist coverage. In reversing the trial court and holding the reduction provision invalid, the court pointed out that the subrogation question was

one affecting only the injured party and his employer's compensation carrier and not the injured party's liability carrier.

Under some statutes, such as our present subrogation statute, the compensation carrier is not entitled to full subrogation and it would be unjust to permit the uninsured-motorist carrier to deduct the full amount of the benefits. Occasionally, for a variety of reasons, the compensation carrier waives its right of subrogation. Where that situation obtains, and the claim is against an insured motorist, the injured party has the benefit of a full recovery from the tortfeasor in addition to his workmen's compensation benefits. There is no reason why he shouldn't enjoy the same windfall under his own uninsured-motorist coverage.

We do not decide the issue of whether the compensation carrier or the employer of this decedent is entitled to subrogation out of the proceeds of the employee's own uninsured-motorist coverage. That issue is not before us. We have cited cases holding no subrogation is permitted and others which do not raise the issue and assume a right of subrogation. Without reference to how that question is ultimately resolved, we are satisfied that the statute does not intend any reduction in uninsured-motorist coverage because of the possibility of duplicated compensation from a collateral source. As we have emphasized, the disposition of proceeds realized from uninsured-motorist coverage is not the concern of the injured party's insurer. If the purpose of the statute is to be fulfilled, the injured party is entitled to the proceeds of his uninsured-motorist coverage within the limits of his own policy coverage free from any reductions which would not be available in a suit against an insured tortfeasor. Accordingly, the judgment is affirmed.

Affirmed.