Janet JANZEN, widow of Frank H. Janzen, deceased employee, Respondent,

v.

LAND O'LAKES, INC., et al., Relators.

No. 48848.

Supreme Court of Minnesota.

March 30, 1979.

C. Douglas Allert, Minneapolis, for relators.

Muir, Lundblad, Meyer, Storey, Simons & Costello and L. Douglas Storey, Mountain Lake, for respondent.

Heard before YETKA, SCOTT, and WAHL, JJ., and considered and decided by the court en banc.

YETKA, Justice.

Certiorari upon the relation of Land O'Lakes, Inc., employer, and Travelers Insurance Co., its insurer, to review a decision of the Workers' Compensation Court of Appeals, filed March 29, 1978, affirming an order of the compensation judge, denying relators any offset against death and dependency benefits for amounts Janet Janzen obtained under the employee's uninsured motor vehicle policy. We affirm.

The facts of the case are not in dispute. On March 11, 1974, Frank Janzen was fatally injured while driving his own automobile in the course of employment with Land O'Lakes. The other vehicle went through a stop sign and struck the decedent's automobile; neither the driver nor the owner of the second vehicle had automobile liability insurance.

The decedent had uninsured motorist coverage under a policy with the American Family Insurance Company, which allowed up to $50,000 for accidental death. On April 8, 1975, Janet Janzen, sole beneficiary, commenced suit against the liability insurer under the uninsured motorist coverage and eventually settled for $42,500.

From March 11, 1974, to April 11, 1976, the relators paid death and dependency benefits totaling $8,706.30, but on March 31, 1976, they filed a petition with the Department of Labor to discontinue dependency compensation. Relators argued that they were entitled to subrogation credit against the money received by the widow from the settlement under the uninsured motorist policy. This assertion was based primarily on Minn.St. 176.061, subd. 5, which reads, in part:

> "Where an injury or death for which compensation is payable is caused under circumstances which created a legal liability for damages on the part of a party other than the employer, * * * legal proceedings may be taken by the employee or his dependents against the other party to recover damages, notwithstanding the payment by the employer or his liability to pay compensation. If the action against such other party is brought by the injured employee or his dependents and a judgment is obtained and paid or settlement is made with the other party, the employer may deduct from the compensation payable by him the amount actually received by the employee or dependents in accordance with subdivision 6. * * * "[1]

---

1. Minn.St. 176.061, subd. 6, provides: "The proceeds of all actions for damages or settlement thereof under this section, received by the injured employee or his dependents or by the employer as provided by subdivision 5, shall be divided as follows:

"(a) After deducting the reasonable cost of collection, including but not limited to attorneys fees and burial expense in excess of the statutory liability, then

"(b) One-third of the remainder shall in any event be paid to the injured employee or his dependents, without being subject to any right of subrogation.

"(c) Out of the balance remaining, the employer shall be reimbursed in an amount equal to all compensation paid under this chapter to the employee or his dependents by the employer less the product of the costs deducted under clause (a) divided by the total proceeds received by the employee or his dependents from the other party multiplied by all compensation paid by the employer to the employee or his dependents.

"(d) Any balance remaining shall be paid to the employee or his dependents, and shall be a credit to employer for any compensation which employer is obligated to pay, but has not paid, and for any compensation that such employer shall be obligated to make in the future.

"There shall be no reimbursement or credit to employer for interest or penalties."

The compensation judge rejected relators' argument, finding that the settlement did not constitute a third-party recovery within the terms and provisions of the statute. This determination was upheld by the Workers' Compensation Court of Appeals.

The question presented is whether a compensation carrier is entitled under Minn.St. 176.061, subds. 5 and 6, to a subrogation credit against the proceeds received by an employee's widow in the settlement of a claim against employee's uninsured motorist coverage carrier.

In arguing that they should be allowed subrogation credit, relators raise essentially two arguments: first, that § 176.061, subd. 5, should be construed to allow an offset for contract liability, and, second, that fairness requires that they be allowed subrogation credit.

The disputed language of subdivision 5 reads: "circumstances which created a legal liability for damages." Relators insist that "legal liability" is the operative language and is to be construed to allow subrogation credit for a variety of liabilities, including contractual liabilities. If this construction were adopted, relators would receive an offset for amounts the respondent obtained under the uninsured motorist policy. Respondent contends, on the other hand, that the term "damages" is controlling and that subdivision 5 is intended to apply only to tort liability.

 This issue is one of first impression,[2] and although the language of the statute is broad, the word "damages" limits the all-encompassing phrase "legal liability." Without the term "damages," the provision would allow an offset where the injury or death was caused under circumstances which created a legal liability, of whatever nature, on the part of someone other than

the employer. Such a provision would indicate that the legislature intended that contractual payments made to the respondent by the uninsured motorist liability carrier would inure to the relators' benefit. Because "damages" is present in the provision, however, and because that term has become a concomitant part of our legal terminology when discussing tort liability, we find that § 176.061, subds. 5 and 6, do not include contract liability based on uninsured motorist coverage.

Determinations in other jurisdictions lend further support to a finding that the subrogation credit should be denied to the relators. Courts consistently hold that carriers that have paid compensation benefits cannot obtain a lien upon proceeds of the claimants' private uninsured motorist policies. 2A Larson, Workmen's Compensation Law, § 71.23. Those courts have interpreted the workers' compensation laws to allow the employer to be subrogated only to the rights of the employee against third-party tortfeasors and have reasoned that the employee's right to receive compensation from an uninsured motorist liability carrier was contractual; the carrier was not deemed to step into the shoes of the tortfeasor.[3]

The relators also assert that the court should try to achieve an optimum result for the competing interests of all parties so that none will bear or receive more than its fair share. In essence, relators assume that respondent has been fully compensated by the uninsured motorist carrier for her actual pecuniary loss; thus, they argue, if they are not afforded subrogation rights she will receive a double recovery.

There are obvious flaws in relators' contention. First, they start from a faulty premise. That respondent settled the unin-

---

2. In *Brunmeier v. Farmers Ins. Exch.*, 296 Minn. 328, 336, 208 N.W.2d 860, 865 (1973), the court dealt with the converse situation and ruled that a provision in an insurance policy that reduced uninsured motorist coverage by amounts paid under workmen's compensation was void. The court specifically left unanswered "the issue of whether the compensation carrier or the employer of this decedent is enti-

tled to subrogation out of the proceeds of the employee's own uninsured-motorist coverage."

3. See, *Travelers Ins. Co. v. Nat'l Farmers Union Property and Cas. Co.*, 252 Ark. 624, 480 S.W.2d 585 (1972); *Horne v. Superior Life Ins. Co.*, 203 Va. 282, 123 S.E.2d 401 (1962); *Commissioners of the State Ins. Fund v. Miller*, 4 A.D.2d 481, 166 N.Y.S.2d 777 (1957).

sured motorist claim does not necessarily mean that she was fully compensated for her losses; many considerations enter into settlements. Respondent may have wished to avoid possibly protracted and frustrating legal battles; respondent may have needed the money immediately; or respondent may have been pressured into the agreement for other reasons. Thus, the amount of the settlement and compensation may not adequately reflect the actual loss of income which the deceased employee would have provided.

 Second, this is not a case where respondent will receive a double recovery, but is one in which respondent will receive compensation from two separate sources. Such a means of compensation has been approved in the past. In *Brunmeier v. Farmers Insurance Exchange*, 296 Minn. 328, 208 N.W.2d 860 (1973), this court found that an injured party could receive both workmen's compensation benefits and the proceeds from his uninsured motorist policy. The court held that a provision in the insurance contract allowing the insurer an offset against the compensation benefits was contrary to the purpose of the workmen's compensation statute. Similarly, in *Wasche v. Milbank Mutual Insurance Co.*, 268 N.W.2d 913 (Minn.1978), this court allowed "stacking" of no-fault basic economic loss benefits under the Minnesota No-Fault Automobile Insurance Act, Minn.St. 65B.41 to 65B.71, because there was no express statutory prohibition. Recovery was permissible up to the actual amount of the loss. By contrast, recovery may not be had where the compensation would exceed the actual losses, as in medical expenses. *Dockendorf v. Lakie*, 240 Minn. 441, 61 N.W.2d 752 (1953).

In the instant case, there is no way to determine accurately what losses respondent will sustain as a result of the employee's death; there are an inevitable number of variables. For this reason, we feel that the decision of the compensation judge is not unfair either to the respondent or to the relators.

Thus, in the light of the overwhelming weight of authority and because of our own previous decisions, notably the *Brunmeier* case, *supra*, the compensation court is affirmed.

ROGOSHESKE, J., took no part in the consideration or decision of this case.