Richard FRYER, Claimant-Respondent,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY, Defendant-Appellant.

No. C8–83–1444.

Court of Appeals of Minnesota.

March 14, 1984.

Jon P. Parrington, Louis R. Tilton, Pustorino & Pederson, Minneapolis, for defendant-appellant.

Jerome E. Kline, Schermer, Schappach, Borkon & Ramstead, Ltd., Minneapolis, for claimant-respondent.

Heard, considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ.

## OPINION

PARKER, Judge.

This is an appeal by defendant-insurer National Union Fire Insurance Company (National) from the district court's order and judgment confirming the authority and award of an arbitration panel.

Four days before the arbitration hearing on Richard G. Fryer's claim for uninsured motorist benefits, the insurer of negligent driver admitted some coverage existed. Based on this communication, National moved the arbitrators to dismiss the arbitration proceeding. Over National's objection, the arbitration panel decided to go forward with the hearing. A majority of the panel awarded Officer Fryer $69,000 in damages. National challenged the award, claiming the admission of an insurer extinguished the panel's authority to arbitrate. The district court confirmed the award and this appeal followed.

## FACTS

Richard G. Fryer is a police officer for the City of Brooklyn Center. At approximately 12:30 A.M. on April 12, 1981 he was on patrol and had stopped for a red light at the intersection of Brooklyn Boulevard and Interstate 694. His squad car was overtaken by a car traveling 40 miles per hour.

The rear end collision that resulted left Officer Fryer permanently injured.

The car that ran into Officer Fryer was driven by Agustin M. Ramirez and owned by Helioberto Rogue and Ofelio Sasa. The car was insured by Illinois Farmers Insurance Group (Illinois Farmers). Mr. Ramirez had automobile liability insurance with the American Family Insurance Group (American Family).

Officer Fryer filed claims with both Illinois Farmers and American Family. By letter of October 13, 1981, Illinois Farmers denied coverage on the ground that Ramirez's use of the car was unauthorized. On March 9, 1982, American Family wrote a letter denying coverage due to Ramirez's unauthorized use.

On May 12, 1982, Officer Fryer filed a claim for uninsured motorist benefits with National, his employer's insurer. On September 14, 1982, Officer Fryer invoked the arbitration provision of the insurance policy and gave National the name of the arbitrator he had selected. National selected the second arbitrator on October 4, 1982. The two arbitrators selected the third arbitrator in December of 1982.

The arbitration hearing was then scheduled for March of 1983. Due to scheduling conflicts, however, the hearing date was changed several times. The last hearing date scheduled was April 25, 1983.

Pursuant to National's request, American Family supplied to them a copy of Ramirez's insurance policy on or about April 13, 1983. National's review of the policy indicated that there was no unauthorized use exclusion. National orally notified American Family of its finding on April 20, 1983. American Family reviewed the policy and determined that there was no exclusion and that secondary coverage did exist. Officer Fryer's counsel was immediately advised of American Family's admission. American Family stated its admission in writing in a letter dated April 21, 1983.

National's efforts to dismiss the arbitration in light of American Family's admis-

sion were unsuccessful. Officer Fryer was determined to proceed with the arbitration.

The arbitration hearing was held on April 25, 1983. National appeared and objected to going forward with the hearing now that American Family had admitted some coverage. The arbitrators considered the objection but decided to proceed.

In addition to Officer Fryer and National, the City's workers' compensation insurer participated in the hearing. Counsel for the compensation insurer maintained that his client should be reimbursed by the uninsured motorist carrier for the $25,225.00 workers' compensation benefits paid. He requested a separate finding to that effect from the arbitrators.

On May 4, 1983, the arbitrators' decision was issued. The decision was signed by the arbitrator selected by appellant National and the independent arbitrator and awarded Officer Fryer $69,000 in damages. No other findings were made.

National filed a motion to vacate and/or modify the arbitration award with the district court on July 22, 1983. The district court's order of August 19, 1983 confirmed the award. A judgment against National in the amount of $69,000 was entered on September 7, 1983. National filed its notice of appeal to this Court on September 26, 1983.

### ISSUES

1. Whether the trial court erred in refusing to vacate an arbitration award when there had been denials of liability coverage triggering uninsured motorist coverage but a qualified admission of coverage by an insurer prior to the arbitration hearing?

2. Whether worker's compensation benefits received by the insured reduce the uninsured motorist insurer's liability?

### ANALYSIS

1. This appeal involves interpretation of the uninsured motorist provisions of an insurance contract. The question is whether the contract provides coverage where a third party is actually insured but his insurance company mistakenly denies coverage.

Officer Fryer is a policeman for the City of Brooklyn Center. While in the course and scope of his employment he is covered under the city's insurance policy with National. Officer Fryer was injured in April of 1981 when another car forcibly struck the rear end of his squad car. The claim he filed with the insurance carrier of the owners of the other automobile was denied. The insurance carrier of the driver of the other automobile also denied his claim.

Officer Fryer then filed an uninsured motorist claim with National. The contract contains a provision for arbitration of uninsured motorist claims:

ARBITRATION

a. If we and an insured disagree whether the insured is legally entitled to recover damages from the owner or driver of an uninsured motor vehicle or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the insured lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

This section provides for arbitration either: (1) when there is dispute over entitlement to uninsured motorists benefits or (2) when the parties disagree over the amount of damages to be recovered.

National agreed to arbitrate and each party selected an arbitrator. The third arbitrator was then selected by the named arbitrators. The hearing was finally held

on April 25, 1983, more than two years after Officer Fryer sustained his injuries.

At the hearing, National objected to the arbitration process because of the qualified admission of coverage by American Family. The arbitrators considered the objection but decided to go forward with the hearing. The district court also considered National's objection and rejected it. We affirm the trial court's confirmation of the arbitration award for the following reasons.

(a) The Language of the Insurance Contract.

An uninsured motor vehicle is defined in the policy as: a land motor vehicle or trailer:

a. For which no liability bond or policy at the time of an accident provides at least the amounts required by the applicable law where a covered auto is principally garaged, *or*

b. For which the sum of all liability bonds or policies at the time of an accident provides at least the amounts required by the applicable law where a covered auto is principally garaged but their limits are less than the limit of this insurance, *or*

c. *For which an insuring or bonding company denies coverage* or is or becomes insolvent, or

d. Which is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an insured, a covered auto or a vehicle an insured is occupying.

(Emphasis added.)

The companies insuring both the driver and the owners of the other car had denied coverage when Officer Fryer filed his uninsured motorist claim. The owners' insurer continues to deny coverage. The driver's insurer denied coverage for 18 months before making a qualified admission of coverage four days before the arbitration hearing.

■ The policy provides coverage when an insuring company denies coverage. The denial of coverage triggers the uninsured motorist coverage. *See generally DiLuzio v. Home Mutual Insurance Company*, 289 N.W.2d 749, 751 (1980) (where the policy's definition of uninsured motor vehicle pinpoints the time at which one determines whether or not an automobile is insured). National's claim that a subsequent admission of coverage revokes the coverage is without contractual support. Additionally, adopting National's argument would require courts to vacate awards where an insurer admits coverage subsequent to the award, thus defeating the binding effect of arbitration.

Finally, the question of coverage is still in some doubt. National has commenced a declaratory judgment action to determine the liability coverage of the insurers of the driver and the owners of the car that caused the accident. As of the date of this opinion, no decision has been issued and the driver's insurer still insists that its liability is secondary to that of the owners.

(b) The Statutory Purpose Behind Minnesota's No-Fault Automobile Insurance Law.

The purpose behind Minnesota's no-fault automobile insurance law is stated in Minn. Stat. § 65B.42. The statute provides:

The detrimental impact of automobile accidents on uncompensated injured persons, upon the orderly and efficient administration of justice in this state, and in various other ways requires that sections 65B.41 to 65B.71 be adopted to effect the following purposes:

(1) To relieve the severe economic distress of uncompensated victims of automobile accidents within this state by requiring automobile insurers to offer and automobile owners to maintain automobile insurance policies or other pledges of indemnity which will provide prompt payment of specified basic economic loss benefits to victims of automobile accidents without regard to whose fault caused the accident;

\*      \*      \*      \*      \*      \*

(4) To speed the administration of justice, to ease the burden of litigation on the courts of this state, and to create a system of small claims arbitration to decrease the expense of and to simplify litigation, and to create a system of mandatory inter-company arbitration to assure a prompt and proper allocation of the costs of insurance benefits between motor vehicle insurers;

\*     \*     \*     \*  ·  \*     \*

Minn.Stat. § 65B.42 (1980).

■ Officer Fryer sustained serious and permanent injuries on April 12, 1981. Almost three years later he has still not been compensated for his damages. National has a right of subrogation for the uninsured benefits it pays to Officer Fryer. The stated purpose of our no-fault law directs us to require National to fulfill its contractual obligation and proceed with its right of subrogation.

### (c) The Favored Status of Arbitration as a Means of Settling Disputes.

The Minnesota Supreme Court has encouraged arbitration as a means of settling disputes. In *State v. Berthiaume*, 259 N.W.2d 904 (Minn.1977), the Court stated:

> Traditionally, we have liberally interpreted and applied the uniform act, recognizing that its basic intent is " \* \* \* to discourage litigation and to foster speedy, informal, and relatively inexpensive procedures for the voluntary resolution of disputes in a forum created, controlled, and administered by the written arbitration agreement."

*Id.* at 909 (quoting *Dunshee v. State Farm Mutual Auto. Ins. Co.*, 303 Minn. 473, 481, 228 N.W.2d 567, 572 (1975).

National's policy included both uninsured motorist coverage and underinsured motorist coverage. The arbitration panel found that Officer Fryer sustained damages of $69,000. The policy limits of the Illinois Farmers policy and the American Family policy were $25,000 each. Even if both insurers had admitted coverage, the damages exceeded the combined limits. Vacating the arbitration award would result in additional costly and unnecessary litigation and arbitration.

■ National has a duty to deal fairly with its insureds. The policy provides for uninsured motorist coverage when an insurer denies coverage. National accepted Officer Fryer's claim and agreed to arbitrate the amount of his recovery. The last minute qualified admission of coverage by the other driver's insurer was considered by the arbitration panel prior to the hearing. We cannot say the panel clearly exceeded their power by continuing with the arbitration. Therefore the arbitration award cannot be overturned. *See Hilltop Construction, Inc. v. Lou Park Apartments*, 324 N.W.2d 236, 239 (Minn.1982); *State v. Berthiaume* at 910.

2. The question of whether worker's compensation benefits paid to Officer Fryer could reduce his uninsured motorist benefits was essentially abandoned by National at oral arguments. Any lingering doubts are resolved by the language of the insurance contract and Minnesota case law.

National's uninsured motorist policy contains both an exclusion provision and a limitation of liability provision. In relevant part, the exclusion provision provides:

This insurance does not apply to:

\*     \*     \*     \*     \*     \*

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation disability benefits or similar law.

■ The recent case of *Cooper v. Younkin*, 339 N.W.2d 552 (Minn.1983) made it clear that prior to the 1983 amendment of the worker's compensation statute the subrogation provisions of the statute did not apply to contractual recoveries such as uninsured motorist benefits. The court stated:

> Regardless who pays the premium, uninsured motorist coverage is simply a contract for the payment of a sum measured by the amount of damages which the insured is legally entitled to recover from an uninsured third-party tortfeasor.

Hence, under the rule adopted in *Janzen,* the proceeds of the employee's uninsured motorist settlement are not subject to the right of subrogation granted the employer by § 176.061. *See Knight v. Insurance Company of North America,* 647 F.2d 127 (10th Cir.1981) (Kansas law) (proceeds of uninsured motorist coverage, paid for by the employer, were not subject to a subrogation credit because the injury did not occur under "circumstances creating a legal liability * * * to pay damages" under the statute). *Id.* at 553–54. Since there is no subrogation right for worker's compensation benefits, full payment of uninsured motorist benefits will not be a direct or indirect benefit to any insurer or self insurer. Additionally, claimant's attorney made it clear at the arbitration hearing that no claim was being made for damages compensable under the Minnesota Worker's Compensation Act.

The limitation of liability provision does not reduce the uninsured motorist insurer's liability either. The contested provision states:

E. OUR LIMIT OF LIABILITY

1. Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations.

2. Any amount payable under this insurance shall be reduced by:

a. All sums paid or payable under any workers' compensation, disability benefits or similar law, and

\* \* \* \* \* \*

In *Brunmeier v. Farmers Insurance Exchange,* 296 Minn. 328, 208 N.W.2d 860 (1973), the Minnesota Supreme Court examined a policy provision that provided:

'Any loss payable to any person under the terms of this Part II shall be reduced by (1) the amount paid and the present value of all amounts payable to him under any workmen's compen-

sation law, disability benefits law or any similar law, and (2) the amounts paid or due to be paid under any valid and collectible automobile medical expense insurance available to the insured.'

The policy also provides that the proceeds shall not inure directly or indirectly to the benefit of any workmen's compensation or disability benefits carrier. *Id.* at 329, 208 N.W.2d at 861. The Court held that the "loss payable" language of the provision had "obvious reference to the loss which is payable to the insured under the terms of the policy and did not refer to the loss which he suffered at the hands of the uninsured motorist." *Id.* at 330, 208 N.W.2d at 861.

In reaching this decision, the court recognized the potential double recovery for the insured but said:

we are satisfied that the statute does not intend any reduction in uninsured-motorist coverage because of the possibility of duplicated compensation from a collateral source. As we have emphasized, the disposition of proceeds realized from uninsured-motorist coverage is not the concern of the injured party's insurer. If the purpose of the statute is to be fulfilled, the injured party is entitled to the proceeds of his uninsured-motorist coverage within the limits of his own policy coverage free from any reductions which would not be available in a suit against an insured tortfeasor.

*Id.* at 336, 208 N.W.2d at 865.

The limitation of liability provision of National's policy is indistinguishable from the provision examined in *Brunmeier.* The attempted limitation is ineffective under *Brunmeier.*

## DECISION

The trial court's order and judgment confirming the award of the arbitration panel is affirmed.