## SHELTER MUTUAL INSURANCE COMPANY *v.* Rick BOUGH

91-278                                834 S.W.2d 637

Supreme Court of Arkansas
Opinion delivered June 22, 1992

22

*Roy & Lambert*, by: *James M. Roy, Jr.*, for appellant.

*Odom & Elliott*, by: *Don R. Elliott, Jr.*, for appellee.

TOM GLAZE, Justice. This insurance case arose from an automobile accident that occurred on February 22, 1989, and requires interpretation of the Arkansas Underinsured Motorist Act of 1987, Ark. Code Ann. § 23-89-209 (1987). In this respect, we recently considered this Act involving almost identical circumstances in *Shelter Mutual Ins. Co.* v. *Irvin*, 309 Ark. 331, 831 S.W.2d 135 (1992).

Rick Bough was driving a vehicle owned by his mother and step-father, Nancy and Robert King, when the vehicle collided with a car owned and operated by Patrick Colf. Bough incurred $38,531.92 in medical expenses as a result of the collision. Colf's insurance carrier, State Farm, paid its policy limits of $25,000 to Bough, and in addition, Bough received $11,960 under the medical pay and wage-loss provisions of his parents' no-fault coverage with Shelter Mutual Insurance company. Upon receiving the $25,000 amount, Bough released both Colf and his carrier from all liability. He did not use any of the $25,000 to reimburse Shelter for the medical and wage loss benefits he previously received.

Bough subsequently sued Shelter for underinsured benefits, alleging Shelter had failed to make such coverage available to the Kings as named insured as required by Act 335 of 1987, codified as Ark. Code Ann. § 23-89-209 (1987). Shelter denied liability asserting that it had made underinsured coverage available to the Kings and that it had no duty to provide such coverage to Rick Bough since he was not the named insured. Shelter also defended, stating that, even if it had otherwise been liable to Bough for underinsured benefits, Shelter was relieved from paying such benefits because Bough had violated the cooperation and subrogation terms of Shelter's policy by settling with Colf and State Farm without notice to Shelter. Both parties moved for directed verdicts, and the trial court denied Shelter's request, but granted Bough's, holding that Shelter had failed to make underinsured benefits available as required by Act 335. The court further held that such benefits would be implied as a matter of law. The case then went to the jury on the issue of damages only, and the jury found Bough had sustained a loss in the sum of $85,000.

The trial court found the parties had stipulated and agreed

that the $25,000 received from State Farm would be deducted from the $85,000 award, leaving $60,000 in damages still owed. The court then held Shelter was entitled to subrogation and a judgment in the amount of $11,960, which represented the medical and wage losses Shelter previously paid Bough. After Shelter received credit and set off for these amounts, Bough received a judgment of $48,040, which amount was covered as underinsured benefits to be paid by Shelter under the Kings' policy.

On appeal, Shelter argues the same three issues it raised below, and Bough cross-appeals, claiming Shelter was not entitled to the $11,960 reimbursement amount. We affirm on all points.

Shelter first asserts that the trial court erred in finding as a matter of law that Shelter failed to make underinsured benefits coverage available to the Kings and wrongly implied such coverage to Bough. The pertinent facts here for deciding this issue are essentially the same as those examined in the recent case of *Shelter Mutual Ins. Co.* v. *Irvin*, 309 Ark. 331, 831 S.W.2d 135. The parties agree there was no provision for underinsured motorist coverage in the King's policy, and Shelter nor its agents or employees gave any oral notice to the Kings that such coverage was available. Shelter never sent any written materials describing or offering the coverage to the Kings. Also, as was the case in *Irvin*, Shelter's application forms signed by the insureds here contained the term "underinsured motorist" where optional coverages and their limits were listed; but again, no evidence reflects this coverage was ever mentioned to or discussed with the Kings.

In *Irvin*, we held Act 335 mandated insurers to offer underinsured coverage, and such mandate was not met by an insurer's mere printing of the term "underinsured motorist" on an application without explanation or mention of it to the insured. Our decision in *Irvin* controls here, and we sustain the trial court's ruling that found Shelter had violated its statutory duty and implied underinsured benefits, covering the $48,040 judgment awarded Bough.

Before leaving Shelter's first point, we note Shelter's attempt to distinguish the present case from *Irvin*, claiming that

it had furnished two applications to the Kings since Act 335 went into effect and that the Kings had rejected underinsured coverage. Although the applications referred to by Shelter were signed by the Kings after Act 335 became effective, those forms differed little from any others previously given the Kings for signature — the term "underinsured motorist" was printed under the list of coverages, the boxes beside the coverage remained blank and there is no evidence Shelter or its agent offered such coverage.

Shelter also argues that, even if underinsured coverage should be implied to the Kings, no such benefits were due Bough because he was not a named insured as that term is used in Act 335. The Kings are the named insureds under their policy, but Bough's operation of the King vehicle on the date of the accident was covered. Under the Kings' policy, an "insured" includes the named insureds (Kings), and their relatives (Bough) and any other person using the automobile of its use was within the scope of the named insured's permission. In addition, the policy reflects the named insureds and family members residing in the household are entitled to medical and hospital benefits. Shelter offers no citation of authority or convincing argument regarding why, if underinsured coverage is implied to the Kings, Bough should not receive such benefits under the terms of Kings' policy.[1]

Shelter next argues Bough forfeited entitlement to any underinsured coverage by settling with State Farm and Colf without notice to Shelter, thus violating the subrogation clause in the Kings' policy. Shelter also points out that the policy provides that "No action will lie against [Shelter] under any coverage unless the insured shall have fully complied with all the terms of this policy," and that "A person claiming coverage . . . must also cooperate with [Shelter] and assist . . . in any manner concerning a claim or suit." By Bough's releasing State Farm and Colf, Shelter claims Bough violated the foregoing policy provisions, making him ineligible for underinsured benefits.

In support of its argument, Shelter cites two Arkansas cases.

---

[1] Shelter cites the district court's decision of *Edens* v. *Shelter*, No. 89-5082, (W.D. Ark., Mar. 30, 1990), but that court did not actually reach the issue concerning whether so-called "non-named" insureds should benefit from coverage available to named insureds.

First, in *Southern Farm Bureau Cas. Ins. Co.* v. *Jackson*, 262 Ark. 152, 555 S.W.2d 4 (1977), the insured knowingly and willfully misrepresented that she was the driver of the insured vehicle at the time of the accident. This court held the insured could not enforce the insured's policy against the insurer, because the insured violated the policy's cooperation clause. Of course, the present case involves no material misrepresentation affecting Shelter's ability to defend under its policy.

The second case cited by Shelter, *Shipley* v. *Northwestern Mutual*, 244 Ark. 1159, 428 S.W.2d 268 (1968), is also different from the one before us. There, the insureds received payment for their medical claims from the tortfeasor, but later sued their insurance company, Northwestern, for the same medical bills. The *Shipley* court affirmed the trial court's directed verdict for the insurance company, finding that the insureds had been paid for the medical expenses and the insurance company could not be obligated to pay them. This court further stated that to hold that Northwestern was obligated to pay the insureds would have ignored the well-established rule of subrogation — to prevent the insured from recovering twice for one harm.

Here, Bough did not recover twice for one harm. Instead, he settled for policy limits ($25,000) which Colf had with State Farm, and then filed suit against Shelter to recover the remaining amount of damages he might be owed. Of course, that is the purpose of the underinsured motorist coverage — to supplement the recovery from the tortfeasor who had insufficient insurance to pay for all the damages the injured party sustained.

Shelter cites the general rule that, where the insured forecloses the insurer's right to subrogation by releasing the tortfeasor, the insurer is released from its liability to pay benefits. *Couch on Insurance 2d* (Rev ed) § 61:196, p. 258 (1983). It ignores, however, the following sentence in the same text that states the court may inquire as to whether the release prejudiced the insurance company. *Id.*; *see also Hoel* v. *Crum & Forster Ins. Co.*, 366 N.E.2d 901 (Ill. App. Ct. 1977); *MacInnis* v. *Aetna Life & Cas. Co.*, 526 N.E.2d 1255 (Mass. 1988). Here, Bough made Shelter aware that Colf's insurance carrier had paid policy limits, and he further informed Shelter of his attempt without success to find other assets to help compensate Bough for the damages he

sustained.[2] Because it denied any underinsured motorist coverage under the Kings' policy, Shelter took no position when notified as to how Bough should pursue his case. In any event, Shelter failed to show that Bough's settlement with and release of Colf and State Farm prejudiced its right of subrogation or possible recovery from Colf or any other potentially liable party. To the contrary, the record reflects Bough got all that was possible when he received the policy limit of $25,000 from State Farm, and Shelter benefited by being able to deduct that amount from the jury verdict rendered against Shelter.

Bough's cross-appeal also concerns the issue of subrogation. He argues that the trial court erred in finding that Shelter was entitled to subrogation rights against Bough for the $11,960 amount Shelter paid in no-fault medical and wage loss benefits. His argument is based in part on Ark. Code Ann. § 23-89-207(a) (1991), which provides as follows:

> (a) Whenever a recipient of § 23-89-202(1) and (2) benefits recovers in *tort* for injury, either by settlement or judgment, the insurer paying the benefits has a right of reimbursement and credit out of the tort recovery or settlement, less the cost of collection, as defined. (Emphasis added.)

Subsections 23-89-202(1) and (2) mentioned in § 23-89-207 are provisions that provide no-fault medical and hospital benefits and income disability benefits. And under the terms of § 23-89-207, Bough argues that Shelter is only entitled to set off its $11,960 in no-fault benefits from the tort recovery amount ($25,000) Bough received from State Farm, not from any underinsured motorist benefits, which are contractual in nature. *Cf. Travelers Ins.* v. *Natl. Farmers Union*, 252 Ark. 624, 480 S.W.2d 585 (1972). In addition. Bough cites cases from other jurisdictions that stand for the proposition that there is no right to subrogation against the insured upon the part of the insurer

---

[2] In addition to his recovery attempt against Colf, Bough also sued another party, Robert Martin, who had operated a third car which barely missed the Bough-Colf collision. After notifying Shelter, Bough dismissed Martin because Martin had no insurance and no significant amount of assets.

where the insured's actual loss exceeds the amount recovered from both the insurer and the wrongdoer. In other words, Bough asserts that because he had not received the total amount of his damages from the tortfeasor, Colf, Shelter has no right of subrogation for the partial amount ($11,960) Shelter paid Bough for medical expenses and wage loss. *See Hardware Dealers Mutual Fire Ins. Co.* v. *Ross*, 262 N.E.2d 618 (Ill. 1970); *Ortiz* v. *Great Southern Fire & Cas. Ins. Co.*, 597 S.W.2d 342 (Tex. 1980); *Lyon* v. *Hartford Accident and Indemnity Co.*, 480 P.2d 739 (Utah 1971); *Rimes* v. *State Farm Mutual Auto Ins. Co.*, 316 N.W.2d 348 (Wis. 1982); *see also*, 44 Am. Jur. 2d *Insurance* § 1846 (1982); *Couch on Insurance 2d*, (Rev ed) § 61:64 (1983); and G. Palmer, *Law of Restitution*, § 23.14 (1978).

■■ Although we have no criticism of the cases cited by Bough, the rule limiting the insurer's rights to subrogation in those cases is not applicable to the facts here. The equitable nature of subrogation is granted an insurer to prevent the insured from receiving a double recovery. Thus, while the general rule is that an insurer is not entitled to subrogation unless the insured has been made whole for his loss, the insurer should not be precluded from employing its right of subrogation when the insured has been fully compensated and is in a position where the insured will recover twice for some of his or her damages. That is the situation here.

■ Before Bough sued Shelter for underinsured benefits, Shelter had paid Bough $11,960 in no-fault benefits. At the time, Bough has incurred $38,531.92 in medical expenses and he had received only $25,000 from State Farm. As previously discussed, Bough prevailed in his suit for underinsured benefits, which assured Bough that he would receive full compensation for the $85,000 verdict the jury awarded him. Accordingly, the trial court gave Shelter a judgment for the $11,960 benefits Shelter previously paid Bough, and off set that amount against Bough's damages. This offset, along with crediting the $25,000 amount paid Bough by State Farm against the $85,000 verdict, prevented Bough from receiving $96,960, or $11,960 more than the jury found his damages to be. Under the circumstances of this case, the trial court correctly permitted Shelter to assert its subrogation right.

In conclusion, we mention Bough's reliance on *Travelers Ins.* v. *Natl. Farmers Union*, 252 Ark. 624, 480 S.W.2d 585. There, the insurer had paid the insured workers' compensation benefits. The insurer, Travelers, later sought to assert its subrogation rights to recover such paid benefits from the insured's policy amount of $10,000 in uninsured motorist benefits that the insured sought from another carrier, National Farmers Union. The parties stipulated at trial that the insured was entitled to recover a sum in excess of the $10,000 uninsured motorist coverage. This court held Travelers could assert its subrogation or lien rights in an insured's tort recovery, but it did not allow the insurer to do so in an action where the insured sought uninsured benefits. In rejecting Travelers' claim, this court discussed the specific language in the statute that permits a workers' compensation carrier subrogation rights and an insured's third-party tortfeasor action, but the court did not allow the carrier to assert its subrogation rights in the insured's contractual action against an insurer which had issued to the insured a liability policy with uninsured benefits coverage.

The court in *Travelers* was not confronted with an insured, as here, who had obtained a tort recovery from the tortfeasor's insurer, had been paid no-fault medical and wage loss benefits from his own insurer and then stood to accumulate double recovery for those no-fault benefits when he became fully compensated for his damages in a later action against his insurer for underinsured benefits. No such windfall or double recovery was involved in *Travelers*, and we do not read that decision to prevent an insurer from asserting the equitable principle of subrogation under circumstances as those existing here. *Travelers* simply is not controlling of the circumstances now before us.

For the above reasons, we affirm the trial court's decision on both direct and cross-appeal.