Stephanie RILEY, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.

No. 10–1220.

Supreme Court of Arkansas.

June 16, 2011.

Rehearing Denied July 27, 2011.

Nolan, Caddell & Reynolds, P.A., by: Bill G. Horton, Rogers; and Robert S. Tschiemer, Mayflower, for appellant.

Boswell Law Firm, by: W. Lee Tucker, Bryant; and Munson, Rowlett, Moore and Boone, P.A., by: Beverly A. Rowlett and John E. Moore, Little Rock, for appellee.

ROBERT L. BROWN, Justice.

Appellant Stephanie Riley appeals with a proper Rule 54(b) certification the dismissal of Count I of her amended petition for declaratory judgment and complaint, which sought a declaratory judgment that appellee State Farm Mutual Automobile Insurance Company (State Farm) had failed to establish a legal lien or right to subrogation under Arkansas law. We agree that the circuit court erred in dismissing Count I, and we reverse the judgment and remand for further proceedings.

On August 30, 2008, Riley was involved in a car accident with Joshua Carnes. Riley sought and received medical treatment as a result of the accident and notified her carrier, State Farm. On September 5, 2008, State Farm wrote GEICO, the liability carrier for Carnes, about its right to subrogation. On September 10, 2008, Riley's attorney wrote State Farm about its coverage of Riley and asked for any disbursements to be sent to his office. Based on her insurance policy, State Farm paid $5000 in medical benefits on Riley's behalf.[1] Subsequently, on March 10, 2009,

---

1. The circuit court found that Riley's claim for medical coverage was made on September 5, 2008. No specific finding was made regarding the actual date when State Farm paid

Riley settled her claim with GEICO for $11,500. GEICO issued one check for $6500 payable to Riley and her attorney and one check in the amount of $5000, payable to Riley, her attorney, and State Farm.

On March 11, 2009, Riley sent a letter to State Farm asserting that "by the time [she] pay[s] the costs incurred in prosecuting this action, including attorneys' fees, court costs, and other necessary fees and expenses it appears that she has not 'been made whole' in this settlement." The letter stated that Riley incurred $2069 in medical expenses. Riley requested that State Farm waive its right to subrogation because the law does not allow subrogation in this case. In a letter dated April 9, 2009, State Farm said that the $11,500 settlement from GEICO was sufficient to "fully compensate Ms. Riley for her injuries." State Farm further offered to reduce its recovery amount on subrogation to $3000.

On April 10, 2009, Riley filed an action for declaratory judgment and a complaint against State Farm. Although it was later amended, the first action had three counts: Count I claimed that State Farm failed to establish a proper lien because no determination had been made that she was made whole, and Counts II and III claimed that State Farm's policy of seeking reimbursement when Riley had not been made whole was a violation of the Arkansas |₃Deceptive Trade Practice Act (ADTPA). During discovery, a dispute arose as to which party had the burden to prove whether Riley was made whole by payments of insurance benefits. State Farm claimed that it had the right to know how Riley determined that she was not made whole by the settlement. Riley, on the other hand, argued that State Farm had to prove that she was made whole before asserting a lien against any proceeds from the settlement with GEICO.

On December 18, 2009, Riley moved for partial summary judgment. In her motion, she stated that State Farm filed a lien on September 5, 2008—when it contacted GEICO—well before she settled with GEICO on March 10, 2009. She claimed that at the time the lien was "filed," State Farm had no way of knowing whether she would be made whole by the settlement. She maintained that the lien was invalid and in violation of Arkansas law because it was filed without a legal determination by a court that she was made whole. Riley prayed that the circuit court enter summary judgment finding that State Farm's lien on the settlement with GEICO was in violation of Arkansas law and invalid. She further requested that the circuit court proceed to adjudicate the remaining claims of breach of contract, violation of the Arkansas Deceptive Trade Practices Act, and punitive damages.

In its response, State Farm stated that it had never filed a lien but had corresponded with GEICO while Riley's action against Carnes was pending. State Farm claimed that the letter merely notified GEICO that State Farm was asserting its right to subrogation. State Farm further maintained that summary judgment was not proper because there were multiple genuine issues of fact as to State Farm's right of reimbursement.

|₄On January 25, 2010, Riley filed an amended declaratory action to invalidate the lien and complaint. In that action, Count I sought a declaratory judgment

the $5000. The parties appear not to dispute that State Farm did pay $5000 worth of medi-

cal bills on Riley's behalf.

that State Farm failed to establish a proper lien. Count I read as follows:

12. The lien or right to subrogation being claimed by the Defendant is not proper pursuant to Arkansas law.

13. "Subrogation is recognized or denied upon equitable principles" and "an insured's right to subrogation takes precedent over that of an insurer, *so the insured must be wholly compensated before an insurer's right to subrogation arises;* therefore, the insurer's right to subrogation arises only in situations when the recovery by the insured exceeds his or his total amount of damages incurred." *Shelter Mut. Ins. Co. v. Kennedy,* 347 Ark. 184, at 188–189, 60 S.W.3d 458 (2001), quoting *Franklin v. Healthsource of Arkansas,* 328 Ark. 163, 942 S.W.2d 837 (1997).

14. State Farm asserted their right to subrogation from GEICO before ever paying a single medical bill on behalf of the plaintiff.

15. At the conclusion of the settlement with GEICO, State Farm maintained their subrogation rights without seeking a judicial determination as to whether or not the plaintiff was made whole by her settlement with GEICO.

16. Current Arkansas law states that State Farm's right to subrogation does not even exist until the plaintiff has been made whole.

17. In order for State Farm to assert their rights of subrogation, they have the burden of proving the plaintiff received a double recovery and they must meet this burden before they can make any claim of subrogation.

18. State Farm has not sought a determination of whether or not the plaintiff received a double recovery therefore the lien or subrogation rights State Farm has asserted against GEICO are premature and in violation of Arkansas law.

Count II sought injunctive relief prohibiting State Farm from filing an "illegal notice[s] of subrogation" against the proceeds of third-party settlements without first filing suit and asserting their subrogation rights. Count III alleged a violation of the ADTPA, and Count IV alleged bad faith in filing the illegal liens. Count V alleged interference with a contractual relationship because State Farm placed a lien against $5000 of Riley's settlement from GEICO, preventing the full use and enjoyment of the settlement.

In an answer to the amended declaratory judgment action and complaint, filed on February 16, 2010, State Farm responded that Riley had been fully compensated by accepting the $11,500 settlement and that it was entitled to subrogation in the amount of $5000. State Farm admitted, in addition, that it claimed its subrogation rights upon Riley's settlement with GEICO after making its own determination that Riley was made whole.

On February 3, 2010, the circuit court held a hearing on Riley's motion for partial summary judgment. On February 17, 2010, the court entered an order denying that motion. On June 7, 2010, the circuit court entered another order after a status hearing conducted on May 7, 2010. In this order, the circuit court ruled that State Farm had a valid but unenforceable lien and that Riley would have the burden of proving that she had not been made whole by the GEICO settlement. The circuit court also noted that Riley's motion for partial summary judgment had been dismissed without prejudice and "would not be renewed at this time."

On July 7, 2010, Riley filed a second motion for partial summary judgment, again asserting that State Farm filed an invalid lien on the proceeds from Riley's

settlement with GEICO. A hearing on the motion was held on July 21, 2010. On August 16, 2010, the circuit court entered a judgment. The judgment reiterated that Riley's motion for partial summary judgment was denied and that State Farm had a valid but unenforceable lien against the settlement funds. The judgment included the following conclusion: "Upon oral motion of State Farm, Count I, including paragraphs 12 through 18 inclusive, of [Riley]'s First |₆Amended Declaratory Action alleging State Farm's lien is illegal and invalid, is dismissed with prejudice."

Because the circuit court did not reach the other claims in the case, it entered a certificate pursuant to Arkansas Rule of Civil Procedure 54(b) as part of the judgment. In that certificate, the circuit court found:

When an insurer pays medical benefits to its insured under A.C.A. § 23–89–202(1) as a result of injuries received in a motor vehicle accident, its right of subrogation/reimbursement arises at the time payment is made by operation of law, by contract, and by A.C.A. § 23–89–207 against any future recovery in tort or settlement for the injury. The lien and right of subrogation/reimbursement thus created is contingent on whether the insured has been "made whole" by the recovery or settlement.

The circuit court concluded in the Rule 54(b) certificate that Riley had insurance coverage in the amount of $5000 for medical payments with State Farm. After State Farm paid those benefits to Riley, State Farm notified GEICO on September 5, 2008, that it had made medical payments and would be asserting a subrogation claim. On September 16, 2008, State Farm notified Riley that it would seek reimbursement for amounts paid pursuant to Arkansas Code Annotated section 23–89–207, and that its lien rights were contingent on Riley being "made whole" by her settlement with GEICO. Riley and GEICO subsequently reached a settlement on March 10, 2009. GEICO made one check payable to Riley and her counsel and one check payable to Riley, her counsel, and State Farm.

The circuit court went on to find in the Rule 54(b) certificate:

[U]nder Arkansas law an automobile liability insurance company that pays medical benefits has the right of reimbursement from the insured's tort recovery and has a lien |₇on the recovery to the extent of the benefits paid. . . . [R]egardless of whether the insurance contract between the insurer and the insured expressly gives the insurer the right [of subrogation], a lien is created subject to a subsequent judicial determination of its unenforceability if the insured contends she has not been made whole by the settlement.

. . . .

Riley has moved that the Court certify this question pursuant to Rule 54(b) of the Arkansas Rules of Civil Procedure. . . . Judicial economy can best be served by answering the basic question of when the statutory lien as well as subrogation/reimbursement rights provided in the contract of insurance or by operation of legal or equitable subrogation are created.

. . . .

The court holds that the rights arise and are created at the time medical payments are made and State Farm is not required to wait until the settlement check is in hand before asserting its rights.

■ On the necessity for the Rule 54(b) certification, the circuit court wrote that "a final determination of this issue may very well dispose of the remaining counts" of

the declaratory judgment action. The other four counts, the court wrote "are based on the nexus of State Farm declining to waive its lien and subrogation/reimbursement rights." We hold this constitutes a proper certification under Rule 54(b).

## I. *Propriety of Dismissal*

There was much debate between the parties on appeal over whether the circuit court dismissed Count I of Riley's petition and complaint under Arkansas Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Riley's first argument for reversal is that the circuit court improperly dismissed Count I because there was no motion for summary judgment filed by State Farm and State Farm made no oral motion to dismiss Count I. State Farm counters that Riley acquiesced to the dismissal during a hearing held before the circuit court on July 21, 2010. We agree with State Farm.

The procedural history of this case is important for deciding this issue. Riley moved for partial summary judgment on December 18, 2009, which the circuit court denied on February 17, 2010. That motion requested that the circuit court find that State Farm had an invalid and unenforceable lien because the lien was filed prior to a legal determination that the insured was made whole. Riley also filed an amended declaratory action on January 25, 2010. State Farm answered on February 16, 2010, and requested that Riley's claim be dismissed. On July 7, 2010, Riley refiled the motion for partial summary judgment. In a letter to the circuit court on that same date, Riley requested that the circuit court

"please certify the question at odds in this case."

On July 21, 2010, the circuit court held a hearing on the motion for partial summary judgment, and the colloquy between the court and the parties shows that Riley agreed to the dismissal and that State Farm made an oral motion to dismiss:

RILEY: Your Honor, I request that you go ahead and certify the question now.... I am ready to reinstitute my motion for partial summary judgment which we discussed last time that I had not yet, that you had dismissed with prejudice. You'd said we really needed to decide that issue before we went any further in the case. And I said, well, I'm not really inclined to refile that motion at this point because I don't want a ruling. Now I do want a ruling, so I'd ask the court to certify those questions.

STATE FARM: Your Honor, you can't just certify a question, you have to give a judgment according to Rule 57.... If [Riley]'s counsel wants a question certified, the pleadings have to be in order in order to do that. The pleadings, to be in order would be, in my opinion, just denying the second motion for partial summary judgment on the grounds that there is nothing new or additional that's transpired since the time of the original denial; *dismiss count one of the amended complaint,* which is an allegation that State Farm has a, quote, illegal lien, end quote; final judgment with prejudice on that issue; then certify it, that issue, according to Rule 57 to the Supreme Court for its determination.[2]

2. The parties referred to Arkansas Rule of Civil Procedure 57, rather than to Rule 54, presumably because this is a declaratory judgment action. Rule 57 provides that "[t]he procedure for obtaining a declaratory judg-

ment pursuant to Ark.Code Ann. §§ 16–111–101 through 16–111–111 shall be in accordance with these rules." Ark. R. Civ. P. 57 (2010). Because declaratory judgments proceed in accordance with our rules, a Rule

THE COURT (directed to Riley): All right. What do you have to say about that?

RILEY: Judge, it's your idea to certify it, and I'll let you do it any way you want.

THE COURT: Well, I'll be glad to. . . . You better draft an order.

RILEY: That'll be fine, Your Honor.

. . . .

STATE FARM: In order that I may be clear, Your Honor, and I'll order a transcript at the end just to make sure, you're denying the second motion for summary judgment with prejudice; you're dismissing count one of the complaint—I understand count one is the allegation of an invalid lien—with prejudice; and then you are certifying the question of the—when a lien arises when medical benefits have been paid.

THE COURT: Now, I think I ruled, or at least I was prepared to rule and if I didn't, that I find the lien valid and that it arises upon your making your payment.

. . . .

THE COURT (directed to Riley): All right, and, you better look that certification thing over.

RILEY: I'll have somebody else, [State Farm]'s drafting it, but I'll have somebody that's far brighter than me overseeing it.

THE COURT: Okay.

(Emphasis added).

■■■ It is well settled in Arkansas that, under the doctrine of invited error, an appellant may not complain of an erroneous action of a trial court on appeal if he or she has induced or acquiesced in that action. *Daniels v. Cravens*, 297 Ark. 388, 390, 761 S.W.2d 942, 943 (1988) (citing

*Jones v. Dierks Forests, Inc.*, 238 Ark. 551, 383 S.W.2d 110 (1964); *Missouri Pac. R.R. Co. v. Gilbert*, 206 Ark. 683, 178 S.W.2d 73 (1944)). This court has also long held that it will not review an alleged erroneous ruling or order unless a party makes known to the trial court beforehand the action which he or she desires the court to take or objects to the action of the court and cites the grounds therefor. *Daniels*, 297 Ark. at 390, 761 S.W.2d at 944 (citing *Turkey Express v. Skelton Motor Co.*, 246 Ark. 739, 439 S.W.2d 923 (1969); *see also* Ark. R. Civ. P. 46).

■ During the hearing, Riley requested that the circuit court certify the made-whole question to this court. After State Farm pointed out that a circuit court cannot certify a question to this court, it suggested that Count I be dismissed and a final judgment be certified on that issue. In response, Riley said, "I'll let you do it any way you want." It is clear that Riley was aware that the suggested course of action by State Farm was to dismiss Count I and then to certify the nonfinal judgment for appeal, and she agreed to it. Thus, any procedural error in this regard was invited, or at least acquiesced in, by Riley. She certainly did not make it known to the circuit court that she preferred an alternative course of action. Our rule is well established that "[t]o preserve a point for appeal, a proper objection must be asserted at the first opportunity after the matter to which objection has been made occurs." *Edwards v. Stills*, 335 Ark. 470, 503–04, 984 S.W.2d 366, 383 (1998). Accordingly, we hold that Riley has not preserved her procedural argument for review.

## II. *Right to Subrogation*

In its judgment of August 16, 2010, the circuit court dismissed Count I of Riley's

---

54(b) certificate may be entered when there is a partial judgment as to one claim or party, and there is no just reason for the delay of entry of final judgment. Ark. R. Civ. P. 54(b) (2010).

amended petition for declaratory judgment and complaint. In doing so, the circuit court found that the right to subrogation arose at the time State Farm paid medical benefits to Riley. Riley responds that this was error and that a right to subrogation or reimbursement does not arise until a legal determination by a court has been made that she has been made whole for her injuries.

 Subrogation is the substitution of one party for another. *See Southern Farm Bureau Cas. Ins. Co. v. Tallant,* 362 Ark. 17, 22, 207 S.W.3d 468, 471 (2005) (citing *Welch Foods, Inc. v. Chicago Title Ins. Co.,* 341 Ark. 515, 17 S.W.3d 467 (2000)). The party asserting subrogation is making a demand under the right of another. *Tallant,* 362 Ark. at 22–23, 207 S.W.3d at 471 (citing *Cooper v. Home Owners' Loan Corp.,* 197 Ark. 839, 126 S.W.2d 112 (1939); *Chaffe & Bros. v. Oliver,* 39 Ark. 531 (1882)). That is to say that because insurers pay the obligations of their insureds, a right in equity to subrogation in the insurers arises. *Tallant,* 362 Ark. at 23, 207 S.W.3d at 471. This assures against unjust enrichment of the insureds by way of double recovery. *Id.* (citing *Shelter Mut. Ins. Co. v. Bough,* 310 Ark. 21, 834 S.W.2d 637 (1992)).

 The made-whole doctrine is a descriptive term for assuring against unjust enrichment of the insureds. *Tallant,* 362 Ark. at 24, 207 S.W.3d at 472. An insured should not recover more than that which fully compensates, and an insurer should not recover any payments that should rightfully go to the insured so that he or she is fully compensated. *Id.* The general rule is that an insurer is not entitled to subrogation unless the insured has been made whole for his loss. *See id.; see also Franklin v. Healthsource of Ark.,* 328 Ark. 163, 942 S.W.2d 837 (1997); *Shel-*

*ter Mut. Ins. Co. v. Bough,* 310 Ark. 21, 834 S.W.2d 637 (1992).

State Farm does not dispute that its right to subrogation arises only after an insured has been made whole. Rather, State Farm urges that at the moment an insurance company pays benefits to an insured, the right to subrogation arises but remains unenforceable until the insured is made whole. Riley, of course, disagrees and contends that the "made whole" legal determination must be made by a court before an insurance company can assert a valid lien on any benefits or third-party payments.

 Riley is only partially correct. Absent an agreement or settlement between the parties, an insurer's right to subrogation does not accrue until there has been a legal determination by a court that the insured has been made whole. However, when the parties are in disagreement, a determination made by the insurance company that the insured has been made whole does not suffice. The consensus in Arkansas case law is that a legal determination, absent agreement of the parties, of whether the insured has been made whole can occur after a settlement is reached but must occur before the insurance company is entitled to recover in subrogation. *See Tallant,* 362 Ark. at 24, 207 S.W.3d at 472 (emphasis added) ("Tallant is entitled to be made whole *before* Southern Farm Bureau is entitled to recover anything against Key."); *Shelter Mut. Ins. Co. v. Kennedy,* 347 Ark. 184, 189, 60 S.W.3d 458, 461 (2001) ("[W]e recognize that the principle ... which holds that subrogation is an equitable right to which an insurer is not entitled unless the insured is wholly compensated for his injuries, must be considered in our review of the trial court's order."); *Franklin v. Healthsource of Arkansas,* 328 Ark. 163, 169, 942 S.W.2d 837, 840 (1997) (emphasis added) ("[T]he in-

sured must be wholly compensated *before* an insurer's right to subrogation arises; therefore, the insurer's right to subrogation arises only in situations where the recovery by the insured exceeds his or her total amount of damages incurred."); *Shelter Mut. Ins. Co. v. Bough,* 310 Ark. 21, 28, 834 S.W.2d 637, 641 (1992) (emphasis added) ("[W]hile the general rule is that an insurer is not entitled to subrogation *unless* the insured has been made whole for his loss, the insurer should not be precluded from employing its right of subrogation when the insured has been fully compensated and is in a position where the insured will recover twice for some of his or her damages.").

■ We emphasize that State Farm's letter to GEICO, dated September 5, 2008, while placing GEICO on notice of State Farm's intent to be subrogated, did not constitute the filing of a subrogation lien. *See, e.g., Daves v. Hartford Accident & Indem. Co.,* 302 Ark. 242, 788 S.W.2d 733 (1990) (noting that in a disagreement between insurance companies over subrogation payments, one company is permitted to notify the other, by letter, of its intent to assert a subrogation claim). Whether State Farm has, in fact, filed or asserted a lien on Riley's settlement proceeds is not at issue in the instant case because State Farm admitted, in ⌊₁₄its answer to Riley's amended declaratory judgment action, that it "asserted its subrogation rights upon [Riley]'s settlement with GEICO, having made a determination that [Riley] was made whole by the settlement."

State Farm attempts to use this language from *Bough* regarding double recovery to support its argument that the right of subrogation arises at the time an insurance company makes payment to an insured, although that right remains unenforceable until the insured is made whole. We do not read our language in the *Bough*

case to support that conclusion. In *Bough,* this court explicitly recognized that the insured would recover twice for some of his damages if Shelter were not reimbursed. In the instant case, unlike the *Bough* case, there has been no judicial determination that Riley was made whole by her settlement. The critical distinction between the facts in *Bough* and those in the instant case is that in *Bough,* the circuit court had decided that the insured had been made whole and that double recovery was a distinct possibility.

■ Following in this line of cases is *Ryder v. State Farm Mut. Auto. Ins. Co.,* 371 Ark. 508, 268 S.W.3d 298 (2007). In *Ryder* this court reversed a grant of summary judgment entered in favor of an insurance company claiming a right of subrogation under Arkansas Code Annotated section 23–89–207 (Supp.2005), which provides an insurer's statutory right to reimbursement. The circuit court had awarded summary judgment to State Farm on the basis that the made-whole doctrine did not apply to statutory reimbursement claims, but this court rejected State Farm's contention. The *Ryder* case, therefore, stands for the proposition that the⌊₁₅made-whole doctrine applies to the statutory right of reimbursement found in Arkansas Code Annotated section 23–89–207. The *Ryder* case also reinforces the conclusion that, when the parties cannot reach an agreement regarding whether an insured has been made whole, a determination must be made by the circuit court before the right of subrogation arises.

### III. *Statutory Right of Reimbursement*

In the instant case, the circuit court granted State Farm's subrogation claim and, in doing so, relied on two statutes, Arkansas Code Annotated sections 23–89–202(1) (Repl.2005) and 23–89–207 (2005). Section 207 provides:

(a) Whenever a recipient of benefits under § 23–89–202(1) and (2) recovers in tort for injury, either by settlement or judgment, the insurer paying the benefits has a right of reimbursement and credit out of the tort recovery or settlement, less the cost of collection, as defined.

(b) All cost of collection thereof shall be assessed against the insurer and insured in the proportion each benefits from the recovery.

(c) The insurer shall have a lien upon the recovery to the extent of its benefit payments.

(d) The insurer for the party who is liable in damages to the injured party shall not condition settlement or payment of a judgment in favor of the injured party upon issuing a single check jointly to the injured party and the injured party's insurance company.

Ark.Code Ann. § 23–89–207.[3]

██ This court's precedent regarding the made-whole doctrine applies with equal force to the statute. *See Ryder*, 371 Ark. 508, 268 S.W.3d 298. The error in the circuit court's order dismissing Count I is that the circuit court determined that State Farm had a valid lien under section 23–89–207 that arose *at the time* State Farm made medical payments to Riley. This is an incorrect interpretation of the statute and our subrogation law. The subrogation lien cannot arise, or attach, until the insured has received the settlement proceeds or damage award and until there is a judicial determination that the insured

has been made whole. *See Tallant,* 362 Ark. at 25, 207 S.W.3d at 473; *see also Ryder,* 371 Ark. 508, 268 S.W.3d 298. Of course, an insurance company and its insured are permitted to reach an agreement that the insured has been made whole without the necessity of a judicial determination.

██ In light of this court's jurisprudence on the made-whole doctrine and taking the facts set forth in Riley's complaint as true, as we are required to do when confronted with a motion to dismiss for failure to state a claim, we reverse the circuit court's dismissal of Count I of Riley's petition for declaratory judgment and complaint, and we remand this case for further proceedings.

Reversed and remanded.

HANNAH, C.J., and HENRY, J., concur.

JIM HANNAH, Chief Justice, concurring.

I concur in the majority's decision that the circuit court must be reversed. However, the majority's statement that "the right to subrogation does not accrue until there has been a legal determination by a court that she has been made whole" may mislead. Based on this language, the reader would assume that every case involving subrogation must be tried. That is not so. The right to subrogation does not accrue unless the insured has been made whole, and a determination that the in-

**3.** Section 202(1) defines what minimum medical and hospital benefits must be provided by automobile insurance companies in this state. That section provides:

(1) All reasonable and necessary expenses for medical, hospital, nursing, dental, surgical, ambulance, funeral expenses, and prosthetic services incurred within twenty-four (24) months after the automobile accident, up to an aggregate of five thousand dollars ($5,000) per person and may include any nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing. Expenses for hospital room charges may be limited to semiprivate accommodations. Ark.Code Ann. § 23–89–202(1).

sured has been made whole may be reached by agreement between the parties, or, where the parties cannot reach an agreement, the issue may be litigated and decided by the court sitting as the finder of fact.

Riley has only added confusion to this case by repeatedly asserting that State Farm filed and asserted a lien when that is clearly not the case. State Farm did not file a lien, nor did it assert a lien.

State Farm asserted a claim under section 23–89–207 for reimbursement, stating in a letter that "[w]e understand that our right to recovery is contingent upon your client being made whole by the settlement you negotiate with the tortfeasor or their insurance carrier." State Farm did state a belief that the amount recovered by Riley was "a sufficient amount to fully compensate Mrs. Riley for her injuries." This was an opinion stated in an attempt to settle the issue of the amount of subrogation, as is made clear by the statement in that same letter that in an effort to settle the dispute, State Farm would reduce its subrogation claim from $5000 to $3000. In its answer, State Farm consistently stated that it believed that Riley was made whole by the settlement. State Farm did not assert that it had the authority to make a binding determination that Riley was made whole, as the majority states. State Farm stated in its answer that "neither Plaintiff nor Plaintiff's counsel may unilaterally decide that issue. Whether or not an insured has been 'wholly compensated' is for the Court to decide sitting without a jury." Such would be the case where the issue is litigated. However, the amount of subrogation may also be reached by settlement by the parties.

State Farm put the parties on notice, including the tortfeasor's insurance carrier, that there was an issue of subrogation in this case that would have to be resolved before the case could be fully and finally settled. The circuit court erred in characterizing a claim for contingent subrogation reimbursement as an "unenforceable lien."

It was in the best interests of Riley and State Farm that State Farm make its claim known as early as possible in the dispute between Riley and the alleged tortfeasor. Only when all the possible claims are identified may cases be effectively settled. Obviously, the existence of a contingent claim for reimbursement of the insurance payments would affect the parties' decisions regarding the amount to be paid in settlement. Equally as obvious, it would come as an unpleasant surprise to an insured to receive a settlement payment only to then have the insurer assert a right to a portion of the settlement proceeds. Also, State Farm would need to make its claim as early as possible to foreclose against the insured asserting defenses such as waiver and laches. State Farm would not be wise to wait and suffer the consequences of an assertion that it had been sitting on or hiding its claim.

This case should be reversed to permit the parties to settle on the amount owed in subrogation or to litigate the issue. Riley has already initiated an action in which she asserts that she was not made whole, and she may wish to proceed with that action.

The same issues decided in this case are also at issue in the companion cases of *Bradley v. State Farm Mutual Automobile Insurance Co.*, 2011 Ark. 257, 2011 WL 2412780 and *Baxter v. State Farm Mutual Automobile Insurance Co.*, 2011 Ark. 260, 2011 WL 2412785 decided this same date. I concur in those cases on the same basis as in the present case.

HENRY, J., joins in this concurrence.