2013 Ark.App. 246

**Christian LOPEZ, Appellant**

v.

**UNITED AUTOMOBILE INSURANCE COMPANY, Appellee.**

**No. CA 12–777.**

Court of Appeals of Arkansas.

April 17, 2013.

Ken Swindle, Bentonville, for appellant.

Wright, Lindsey & Jennings, LLP, Rogers, by: Caley B. Vo, for appellee.

RITA W. GRUBER, Judge.

Appellant Christian Lopez appeals from the trial court's dismissal of her complaint against appellee United Automobile Insurance Company, in which she asked that the trial court (1) declare appellee's inclusion of her insurer as a payee on the settlement check to her invalid, void, and unenforceable and (2) find that this inclusion breached the agreement between the parties. We reverse and remand for further proceedings consistent with this opinion.

This case arose from a car accident on December 1, 2010, between appellant and Abigail and Jesus Torres, who were alleged to have been at fault in the accident and who were insured by appellee. Appellant's insurance carrier was Shelter Insurance, which is not a party to this lawsuit. After the accident, Shelter paid $5000 in benefits to appellant's healthcare providers pursuant to its policy with appellant. Shelter then sent a letter to appellee stating that its investigation indicated that liability for the accident rested with the Torreses, noting that it had paid $5000 on appellant's behalf, and requesting "reimbursement of our subrogation lien." Shelter asked appellee not to issue one draft for its lien and for the "BI" (bodily injury) settlement but to issue a separate check for reimbursement made out to Shelter and appellant's attorney. This letter was dated May 24, 2011, and contained no attachments, judicial orders, or other information regarding Shelter's alleged lien.

Appellant and appellee subsequently reached a settlement of appellant's claim for damages, and on March 13, 2012, appellant signed a settlement document ("Settlement"), prepared by appellee and printed on appellee's letterhead, which stated in pertinent part:

*BODILY INJURY SETTLEMENT*

*I, Christian Lopez [and spouse], for and in consideration of the sum of Five Thousand Two Hundred Dollars and 00/100, ($5,200.00), money of the United States to me, paid in hand by UNITED AUTOMOBILE INSURANCE COMPANY and Jesus Torres and Abigail Torres.*

*Receipt of which is hereby acknowledged, and by these presents do myself, heirs, executors, administrators, remise, release and forever discharge Jesus Torres and Abigail Torres and UNITED AUTOMOBILE INSURANCE COMPANY, including their officers, agents, agents, successors, and assigns of and from all, and all manner of action, and actions, cause and causes, of actions, suits, contracts, agreements, promises, damages, claims and demands whatsoever in law or equity, which against said party above named I ever had, now have, or hereafter may have, or which my heirs, executors, or administrators,*

*hereafter can, shall or may have for upon or by reason of any matter cause or thing whatsoever, from the beginning of the world to the day of these presents, for an incident occurring on December 1, 2010, at or near Old Wire Street and Southern Trace in Rogers, Arkansas. In consideration of said payment, the undersigned hereby agrees to indemnify and hold harmless United Automobile Insurance Company and its insured, Jesus Torres and Abigail Torres, from any and all liens that resulted from this loss of December 1, 2010, including, but not limited to: hospital liens, doctor liens, chiropractic liens, attorney liens, Medicaid liens, Public Aid liens, personal injury protection liens, and/or workman's compensation lien.*

. . .

*This Release is made with the understanding of the nature of the injuries and of the possibility of injuries existing which may or may not be known to either party at this time and of any injuries or ailments that hereafter may develop; and contains the entire agreement and no verbal representations or promises have been made. Please be advised that the foregoing offer is not an acceptance of coverage by United Automobile Insurance Company, nor is said offer an admission of fault, or any percentage thereof, on the part of the insured.*

After appellant executed the Settlement, appellee issued a check on March 21, 2012, in the amount of $5200 made payable to appellant and her husband, certain health-care providers, Shelter Insurance, and appellant's attorney. Through her attorney, appellant objected to the inclusion of Shelter as a payee on the settlement check and asked appellee to reissue the check without naming Shelter as a co-payee, noting that appellant had never agreed with appellee that Shelter should be listed as a co-payee, that Shelter had not filed a lien or obtained a judicial determination that appellant had been made whole, and that it was therefore improper to include Shelter on the check. Appellee refused to reissue the check, responding that it had an obligation to protect its insured and all lien-holders.

Thereafter, on April 10, 2012, appellant filed this action for declaratory judgment and breach of contract against appellee, contending that she settled her claim against the Torreses, who were insured by appellee, for $5200; that she agreed to the release included in the Settlement in exchange for the $5200; that the Settlement did not stipulate payment to Shelter; that Shelter had claimed reimbursement rights of $5000 on appellant's settlement of her claim but did not have a perfected lien on the Settlement; that appellee's check listed Shelter as a co-payee; and that appellee violated Arkansas law and breached the terms of the contract between appellee and appellant by including Shelter on the check. Appellee filed a motion for summary judgment, claiming that appellant could not show that appellee breached the settlement agreement; that there was no dispute of material fact that the Settlement did not prohibit appellee from including other payees on the settlement draft; and that Shelter had asserted a subrogation lien "potentially expos[ing] United Automobile to liability to Shelter, and . . . [i]ncluding Shelter on the check is the least burdensome way of resolving the potential lien." In its brief in support of its motion, appellee argued that the Settlement included a promise by appellant to indemnify and hold appellee harmless from any and all potential liens and that appellee was merely holding appellant to that promise.

Appellant filed a response and a cross-motion for summary judgment, attaching her affidavit stating that Shelter had neither sued her nor served a lien upon her. Appellant contended that she agreed in the Settlement to assume the obligation of indemnifying and holding appellee harmless from any and all liens that resulted from the accident, including personal-injury-protection liens, in exchange for the $5200. She argued that appellee negotiated and bargained for this protection in exchange for giving $5200 to appellant and that appellee breached its contract with her by naming Shelter as a co-payee. Appellant contended that Shelter did not have a lien and that appellee filed no proof demonstrating that Shelter had a valid lien or judgment against appellant. The only evidence provided by appellee was a letter from Shelter stating that it requested reimbursement of its subrogation lien. Appellant then cited *Riley v. State Farm Mutual Automobile Insurance Co.*, 2011 Ark. 256, 381 S.W.3d 840, in which our supreme court made it clear that a letter by the victim's insurer does not constitute a lien. After a hearing on the matter, the trial court entered an order granting appellee's motion for summary judgment, denying appellant's cross-motion for summary judgment, and dismissing the case. Appellant brought this appeal from the court's order.

A circuit court may grant summary judgment only when it is clear that there are no genuine issues of material fact to be litigated and that the party is entitled to judgment as a matter of law. *Mitchell v. Lincoln*, 366 Ark. 592, 596, 237 S.W.3d 455, 458 (2006). Once the moving party has established a prima facie case showing entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* at 597, 237 S.W.3d at 458. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* Ordinarily, we view the evidence in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Aloha Pools & Spas, Inc. v. Employer's Ins. of Wausau*, 342 Ark. 398, 403, 39 S.W.3d 440, 443 (2000). However, in a case where the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Hobbs v. Jones*, 2012 Ark. 293, at 8, 412 S.W.3d 844, 850–51. As to issues of law presented, our review is de novo. *Preston v. Stoops*, 373 Ark. 591, 593, 285 S.W.3d 606, 609 (2008).

■ Appellant contends that the circuit court erred in awarding summary judgment to appellee and dismissing its complaint. She argues that appellee's inclusion of Shelter as a co-payee on the settlement check to her was invalid, void, and unenforceable under Arkansas law and that this inclusion breached the parties' agreement. Although appellee mentions that it did not sign the Settlement (perhaps attempting to suggest that the parties thus had no agreement), the Settlement was in the nature of a release, contained a signature block for appellant only, was drafted by appellee, was printed on appellee's letterhead, and settled the parties' claims regarding the accident between appellant and the Torreses. Further, appellee admits that it issued a check in the amount of $5200 after it received the signed Settlement. Citing our supreme court's opinion in *Daves v. Hartford Accident & Indemnity Co.*, 302 Ark. 242, 788 S.W.2d 733 (1990), appellee argues that it was entitled to protect itself against a potential lawsuit by Shelter to enforce its lien, contends that the re-

lease in the Settlement contemplated other liens, and notes that nothing in the Settlement prevented it from adding Shelter as a co-payee.

We turn first to the relevant law. Arkansas Code Annotated section 23–89–207 provides a right of reimbursement to an insurer who pays medical or disability benefits when the recipient of those benefits recovers in tort for injury either through settlement or judgment. Ark.Code Ann. §§ 23–89–202 & 207 (Repl.2004 & Supp. 2011). Section 23–89–207(c) provides that "the insurer shall have a lien upon the recovery to the extent of its benefit payments." Our supreme court has referred to this statutory reimbursement as a right of subrogation. *See Riley v. State Farm Mut. Auto. Ins. Co.*, 2011 Ark. 256, 381 S.W.3d 840; *Ryder v. State Farm Mut. Auto. Ins. Co.*, 371 Ark. 508, 268 S.W.3d 298 (2007); *Shelter Mut. Ins. Co. v. Bough*, 310 Ark. 21, 834 S.W.2d 637 (1992).

The court made it clear in *Ryder* that these statutory liens were subject to the made-whole doctrine, which is a doctrine preventing an insured or insurer from being unjustly enriched. 371 Ark. at 516, 268 S.W.3d at 303–04. The doctrine provides that an insurer is not entitled to subrogation under the statute unless the insured has been made whole for his loss. *Ryder*, 371 Ark. at 514, 268 S.W.3d at 302; *see also Franklin v. Healthsource of Ark.*, 328 Ark. 163, 169, 942 S.W.2d 837, 840 (1997). ("[T]he insured must be wholly compensated before an insurer's right to subrogation arises; therefore, the insurer's right to subrogation arises only in situations where the recovery by the insured exceeds his or her total amount of damages incurred"). It was not until *Riley* that the supreme court clarified that the burden of proof regarding whether the insured had been made whole was on the insurer. *Riley*, 2011 Ark. 256, 381 S.W.3d

840. Specifically, the court held that "[t]he subrogation lien cannot arise, or attach, until the insured has received the settlement proceeds or damage award *and* until there is a judicial determination that the insured has been made whole." *Riley*, 2011 Ark. 256, at 16, 381 S.W.3d at 850 (emphasis added).

As here, the plaintiff in *Riley* suffered an injury in a car accident that was not her fault. Riley's insurer, State Farm, paid $5000 in medical benefits on Riley's behalf and retained the right to seek subrogation for the payment. State Farm sent a letter to GEICO, the insurer for the driver who was at fault, requesting a subrogation payment in the amount of $5000. GEICO and Riley later entered into a settlement for $11,500. GEICO issued one check for $6500 payable to Riley and her attorney and one check for $5000 payable to Riley, her attorney, and State Farm. Riley sued State Farm, contending that it failed to establish a legal lien or right to subrogation. The circuit court found that State Farm's lien was valid and arose when it made the $5000 payment to Riley. The supreme court reversed, holding that—absent an agreement or settlement between the insured and the insurer—the insurer was not entitled to subrogation unless there had been a legal determination by a court that the insured had been made whole. The court also held that State Farm's letter to GEICO informing GEICO of its payment to Riley and its claim of a subrogation lien "did not constitute the filing of a subrogation lien." *Riley*, 2011 Ark. 256, at 13, 381 S.W.3d at 849.

Applying the law to the facts in this case, we hold that there is no evidence that Shelter has a valid lien on the $5200 paid by appellee to appellant pursuant to the parties' settlement of appellant's tort claim. Appellee presented nothing more than a letter from Shelter stating that it

had paid $5000 to appellant and requesting reimbursement of its subrogation lien. Appellee presented no evidence to refute appellant's affidavit that Shelter had not sued her or otherwise filed a lien. Indeed the only writing between the parties evidencing their agreement is the Settlement signed by appellant, which does not mention Shelter or provide that the $5200 to be paid by appellee to appellant is to be given to anyone other than appellant. Moreover, in consideration for the $5200 from appellee, appellant released the Torreses and appellee from any and all *"actions, cause and causes, of actions, suits, contracts, agreements, promises, damages, claims and demands whatsoever in law or equity, which against said party above named I ever had, now have, or hereafter may have, or which my heirs, executors, or administrators, hereafter can, shall or may have for upon or by reason of any matter cause or thing whatsoever, from the beginning of the world to the day of these presents, for an incident occurring on December 1, 2010, at or near Old Wire Street and Southern Trace in Rogers, Arkansas."* She also agreed to *"indemnify and hold harmless United Automobile Insurance Company and its insured, Jesus Torres and Abigail Torres, from any and all liens that resulted from this loss of December 1, 2010, including, but not limited to: hospital liens, doctor liens, chiropractic liens, attorney liens, Medicaid liens, Public Aid liens, personal injury protection liens, and/or workman's compensation lien."* The parties clearly contemplated the possibility of a "personal injury protection lien," as allegedly retained by Shelter, and appellant agreed to indemnify and hold harmless appellee from any loss resulting therefrom.

Appellee argues that the Settlement did not prohibit it from including Shelter as a co-payee and cites *Daves v. Hartford Accident & Indemnity Co.*, 302 Ark. 242, 788 S.W.2d 733 (1990), to support its position that it might be required to pay Shelter and that it was simply holding appellant to her promise to protect appellee against such a lien. Appellee then claims that appellant could have negotiated who should be included on the check and she did not. First, *Daves* was decided in 1990, before the supreme court clarified in *Ryder* that statutory liens were subject to the made-whole doctrine and in *Riley* that the insurer was not entitled to subrogation unless it had obtained a legal determination by a court that the insured had been made whole.

In *Daves v. Hartford Accident & Indemnity Co.*, Daves was injured in a car accident and was paid $9060 by his own carrier, Hartford. Daves then sued the tortfeasor Breyel, who was insured by Sentry, and Daves eventually settled with Breyel and Sentry for $25,000. Before the settlement, Hartford had notified Sentry on a number of occasions of its statutory lien and requested payment from Sentry. When Sentry did not honor Hartford's subrogation lien, Hartford sued Sentry and Daves. The questions before the jury were whether Hartford was estopped to assert its lien rights and the amount of damages suffered by Hartford. The trial court entered judgment in favor of Hartford. On appeal, the supreme court affirmed and held that "Sentry cannot legally or equitably ignore its responsibility to pay Hartford's lien even though it may have parted with the settlement proceeds through improvident payment to Daves." *Id.* at 250, 788 S.W.2d at 737.

Appellee argues that it could be in a *Daves* predicament if it does not include Shelter as a co-payee. We disagree. In *Daves*, the supreme court specifically stated that "it is obvious that the [trial] court concluded, as a matter of law, that Hartford had established its rights to a statuto-

ry lien." *Daves*, 302 Ark. at 247, 788 S.W.2d at 736. None of the parties in *Daves* disputed that Hartford had a statutory lien that it was entitled to enforce against Daves; they merely disputed whether it could enforce the lien against Sentry. *Id.* at 248, 788 S.W.2d at 736. In the case at bar, as in *Riley*, there is no evidence that Shelter has a valid lien against appellant because there is no evidence that it has obtained a judicial determination that appellant has been made whole. Thus, the holding in *Daves* does not apply to this case.

Secondly, whatever appellant and appellee may or may not have negotiated instead of what they did negotiate is not relevant. Appellee protected itself from potential liens like Shelter's by requiring appellant to sign the Settlement indemnifying appellee. It cannot independently change its bargain and condition its own performance on its self-appointed right to insure appellant's performance of her promises. Although we decide this case in favor of appellant because there is no evidence that the parties agreed for appellee to include ₁₁Shelter as co-payee on the draft, we note that, in any case, Arkansas Code Annotated section 23–89–207(d) does not allow an insurer for the tortfeasor, in this case appellee, to "condition settlement or payment of a judgment in favor of the injured party upon issuing a single check jointly to the injured party and the injured party's insurance company." Allowing appellee to include Shelter as a co-payee when its Settlement with appellant not only did not authorize such an inclusion but when Arkansas law actually forbids it to do so would establish an unacceptable precedent contrary to statutory law. It would also effectively shift the burden of proving that an injured party was made whole from Shelter to appellant, contrary to the supreme court's holding in *Riley*.

Therefore, we reverse the circuit court's order dismissing appellant's complaint and remand for the court to enter judgment consistent with this opinion.

Reversed and remanded.

HARRISON and BROWN, JJ., agree.