WAYMOND M. BROWN, Judge
Appellants E B Management Company, LLC (E B Management), and Ernie of Little Rock, Inc., d/b/a Ernie Biggs (Ernie Biggs), and Brandon Griffin[1] appeal from the circuit court's order denying their motion for summary judgment, dismissing their complaint for declaratory judgment, and granting the cross-motion for summary judgment of appellees Houston Specialty Insurance Company (Houston Specialty), and Michael Scott Tice. On appeal, Ernie Biggs argues that the (1) circuit court erred in finding that the insurance policy was unambiguous and (2) allegations of the underlying complaint give rise to the possibility of coverage and trigger the appellee's duty to defend. We affirm.
On August 29, 2015, Houston Specialty issued a commercial general liability (CGL) policy to E B Management. The policy stated the following:
SECTION I - COVERAGES
COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.
However, a limited-assault-or-battery-coverage section stated that it modified the CGL policy:
I. LIMITED ASSAULT AND BATTERY INSURING AGREEMENT
A. We will pay all sums the Named Insured is legally obligated to pay as damages because of "injury", "bodily injury", "property damage" or "personal and advertising injury" arising out of an "assault or battery incident" by any insured.
In the "EXCLUSIONS" section, the policy stated:
The following exclusion is added to the COMMERCIAL GENERAL LIABILITY COVERAGE FORM:
Injury, damage or loss, however caused, arising, directly or indirectly, out of:
*410 1. Assault;
2. Battery;
3. Any "assault or battery incident".
In the immediately following "DEFINITIONS" section, "assault and battery incident" is defined:
"Assault and battery incident" means harmful or offensive contact between or among two or more persons including, but not limited to, apprehension or harmful or offensive contact or threats or harmful or offensive contact. An "assault or battery incident" may be:
a. provoked or unprovoked by any person, and
b. arise out of or result form any act or omission in connection with:
(1) Prevention or suppression of an "assault or battery incident";
(2) Protection of persons or property;
(3) Negligent hiring, supervision, retention or training or any "employee" of the Insured; or
(4) Implementation of adequate security measures, through security personnel, surveillance or other security devices.
On December 29, 2015, Griffin paid an entry fee into Ernie Biggs as well as twenty dollars to a piano player to GO on stage and play the drums during a song being played by that piano player. Stating that Griffin was not keeping the beat, the piano player stopped playing the song. Griffin asked for the return of his twenty dollars; the piano player declined. At some point near this time, Tice removed Griffin from the stage and threw Griffin out the door of the establishment. After being released by Tice, Griffin hit his head on the concrete sidewalk, causing injury.
On April 5, 2016, Griffin filed a complaint against Ernie Biggs and Tice, asserting a cause of action for negligence under the doctrine of respondeat superior, because Tice "negligently decided to come on stage and jerk Plaintiff Brandon Griffin off the stage, negligently led him to the door with too much force, and negligently threw Plaintiff Brandon Griffin out the door causing Plaintiff Brandon Griffin to hit his head on the concrete sidewalk outside the front door." Griffin further alleged that he was "knocked unconscious, sustained a brain bleed causing a traumatic brain injury, and has permanent brain damage." Houston Specialty provided a defense to Ernie Biggs under the policy's assault-and-battery coverage and not its CGL coverage.[2]
In an amended complaint filed on July 31, 2017, Griffin added E B Management as a defendant in the case. He also modified his statement of the case to assert that he paid the piano player forty dollars and that the piano player offered return of only twenty dollars when he requested a refund.
On August 20, 2017, E B Management and Ernie Biggs filed a complaint for declaratory judgment. Griffin answered in agreement on October 10, 2017. Houston Specialty answered in opposition on November 30, 2017, and sought dismissal of the complaint with prejudice.
Griffin voluntarily nonsuited his negligence complaint at some point. He refiled his complaint of December 28, 2017, adding *411 Little Rock Ambulance Authority d/b/a Metropolitan Emergency Medical Services (MEMS), Arch Insurance Company, and five John Doe insurance companies as additional defendants. A negligence claim was asserted against these entities due to MEMS's employees allegedly being "negligent in causing further injury to Plaintiff Brandon Griffin, with that negligence being imputed to" MEMS.
On March 9, 2018, Houston Specialty filed a motion for summary judgment and a separately filed memorandum in support. It asserted that it had "already accepted coverage under the Policy's only applicable coverage afforded for "assault and battery incidents" subject to a $ 100,000 limit of liability, and owes no further obligation to [E B Management and Ernie Biggs] in connection with this lawsuit."
Also on March 9, 2018, E B Management and Ernie Biggs filed a cross-motion for summary judgment and a separately filed brief in support. Therein, it stated:
5. The [Houston Specialty] Policy provides coverage under its Commercial General Liability Coverage Form (the "CGL Coverage Form"), which also has certain exclusions as more fully set forth in the Complaint accompanying brief in support of this motion. One such exclusion is for an "assault and battery incident," which is defined under the Policy and gives rise to limited Assault and Battery Coverage [ (A & B Coverage) ].
6. The limits of insurance under the CGL Coverage Form are $ 1 million. The limits of insurance under the A & B Coverage are $ l00,000. Both limits of insurance are inclusive of the costs of defense or "eroding" limits.
7. The complaint filed in the Underlying Action alleges theories of recovery grounded exclusively in negligence and does not allege (nor purport to allege) any claim, injury, damage, or loss arising out of an "assault," "battery," or "assault or battery incident."
8. [Houston Specialty] has denied coverage under the Policy's CGL Coverage Form for the Underlying Action and refuses to provide them with either a defense or indemnification under that coverage part. [Houston Specialty] is instead providing a defense to the Underlying Action under the lower limits of the A & B Coverage[.]
E B Management and Ernie Biggs sought entry of a declaratory judgment that Houston Specialty "has a duty to indemnify E B Management and Ernie Biggs in the Underlying Action under the provisions of the Policy's CGL Coverage Form."
Following a hearing on July 20, 2018, the circuit court entered an order denying the appellants' motion for summary judgment, dismissing their complaint for declaratory judgment, and granting the appellee's cross-motion for summary judgment. Therein, they stated:
[Appellants] contend that resolution of the coverage dispute should be driven by the allegations of the Amended Complaint, which contains numerous assertions that the injuries suffered by Brandon Griffin resulted from negligence on the part of Separate Defendant Tice and Separate Defendant Ernie Biggs Piano Bar, his employer. And, plaintiffs contend that the insurance contract is ambiguous so that the Court should construe the meaning of "assault and battery incident" and be guided by the intent requirement found in the torts of assault and battery. However, as previously stated, the Limited Assault and Battery Coverage Endorsement defines "assault and battery" for purposes of the *412 insurance contract. The definition is clear and unambiguous. There is no need to employ rules of construction to discern the meaning of "assault and battery" for purposes of resolving the coverage dispute.
Hence, the Court must focus on the incident or injury that gave rise to the claim, rather than the theory of liability asserted in the Amended Complaint. The action of Michael Tice (the Ernie Biggs bouncer who ejected Brandon Griffin from that establishment resulting in Griffin sustaining a closed head injury from the fall) was "harmful or offensive contact between ... two ... persons ..." regardless whether Michael Tice intended to commit the torts of assault or battery as defined by the Arkansas Model Jury Instructions (Civil). To arrive at a different conclusion would involve the Court imposing a meaning that is different from the plain and unambiguous definition of "assault and battery" stated in the policy. In effect, the Court would be re-writing the contract on terms contrary to the explicit and unambiguous definition the insurance carrier declared when the coverage was offered and which its insured accepted.
This timely appeal followed.
A circuit court may grant summary judgment only when it is clear that there are no genuine issues of material fact to be litigated and that the party is entitled to judgment as a matter of law.[3] Once the moving party has established a prima facie case showing entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact.[4] On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered.[5] Ordinarily, we view the evidence in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party.[6] Where there are no facts in dispute, our review focuses on the circuit court's application of the law to the facts.[7] We give the circuit court's conclusions of law no deference on appeal.[8]
The appellants essentially argue first that "assault and battery incident[,]" as defined by the policy, is "inherently unreasonable and, at a minimum, ambiguous" because it does not include an element of intent as is found in the legal definitions for assault and battery. They go on to argue second that because Griffin's complaint is for negligence-which lacks an intent element as legally defined-Houston Specialty should be required to defend Griffin's complaint under the CGL policy-with the higher policy limit-and not the A & B Coverage-with the lower policy limit. In making these arguments, appellants *413 necessarily admit that "assault and battery incident" is defined by the policy. So the question is whether the given definition is ambiguous.
The initial determination of the existence of an ambiguity rests with the circuit court.[9] Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one equally reasonable interpretation.[10] The primary contract-interpretation rule is to give the parties' words the meaning that they intended them to have.[11] And we must give the words their plain and ordinary meaning.[12] Another settled rule is that the parties' intention must be gathered, not from particular words and phrases, but from the entire agreement.[13]
Prior to using contract-interpretation devices, the contract must be ambiguous.[14] A court cannot make a contract for the parties but can only construe and enforce the contract that they have made.[15] Moreover, we will not read into the contract words that are not there.[16] And we will not rewrite a contract or approve additional terms that would, in effect, enforce a contract that the parties might have made but did not make.[17]
A plain reading of the contract shows that an "assault and battery incident" is a "harmful or offensive contact between or among two or more persons" without regard to the listed act or omission from which it arose. We hold that the circuit court did not err in finding that the definition provided for "assault and battery incident" is not ambiguous as there is not more than one equally reasonable interpretation of the definition.
Griffin was physically removed from the stage by an employee of Ernie Biggs, removed from the establishment, and released onto the sidewalk where he landed and hit his head. These actions fit squarely within the policy's definition of "assault and battery incident" since being thrown out of an establishment cannot be reasonably found to be anything other than "harmful or offensive," and it occurred between two persons-Tice and Griffin. This court cannot find error in the circuit court's finding that such actions constituted an "assault and battery incident" as defined. As such is the case, Houston Specialty is required to defend under the A & B Coverage and not the CGL Coverage. No one argues that it failed to do so. It offered to settle the matter for the balance of the A & B Coverage.[18]
*414 Appellants would have this court read an intent element into the contract that simply is not there in order to "give rise to the possibility of coverage" under the CGL coverage. The lack of inclusion of such an element, which Houston Specialty could have included in its definition but declined to do, does not make the term "inherently unreasonable" or ambiguous. And when the term is clearly defined, this court need not interpret it. Furthermore, to the extent that appellants argue that their asserted cause of action governs the substance of the case to be litigated over the defined terms of the contract, it is well settled that the language of the contract governs.[19]
Affirmed.
Gladwin, Harrison, Switzer, and Vaught, JJ., agree.
Abramson, Virden, Whiteaker, and Hixson, JJ., dissent.

Griffin originally filed a complaint against Ernie Biggs but subsequently joined appellants' position on appeal.

The CGL coverage had a policy limit of $ 1,000,000 while the assault-and-battery coverage had a policy limit of $ 100,000. In his April 3, 2017 response to a March 8, 2017 letter from Griffin's counsel proposing a settlement amount, Houston Specialty's counsel declined Griffin's offer as it "[could not] satisfy the portion of the demand in excess of the available Policy Limits[.]" It did, however, offer "the applicable liability limits that remain available on its Policy[.]"

Lopez v. United Auto. Ins. Co. , 2013 Ark. App. 246, at 5, 427 S.W.3d 154, 157 (citing Mitchell v. Lincoln , 366 Ark. 592, 596, 237 S.W.3d 455, 458 (2006) ).

Id. (citing Mitchell , 366 Ark. at 597, 237 S.W.3d at 458 ).

Id.

Id. (citing Aloha Pools & Spas, Inc. v. Employer's Ins. of Wausau , 342 Ark. 398, 403, 39 S.W.3d 440, 443 (2000) ).

George v. Great Lakes Reinsurance (UK) PLC , 2015 Ark. App. 36, at 4, 454 S.W.3d 243, 245 (citing Harasyn v. St. Paul Guardian Ins. Co. , 349 Ark. 9, 75 S.W.3d 696 (2002) ; Chamberlin v. State Farm Mut. Auto. Ins. Co. , 343 Ark. 392, 36 S.W.3d 281 (2001) ).

Id. (citing Morningstar v. Bush , 2011 Ark. 350, 383 S.W.3d 840 ).

Lee v. Bolan , 2010 Ark. App. 209, at 7, 374 S.W.3d 718, 723 (citing Fryer v. Boyett , 64 Ark. App. 7, 978 S.W.2d 304 (1998) ; Wedin v. Wedin , 57 Ark. App. 203, 944 S.W.2d 847 (1997) ).

Rausch Coleman Homes, LLC v. Brech , 2009 Ark. App. 225, at 5, 303 S.W.3d 456, 459 (citing Magic Touch Corp. v. Hicks , 99 Ark. App. 334, 260 S.W.3d 322 (2007) ).

Prochazka v. Bee-Three Dev., LLC , 2015 Ark. App. 384, at 4, 466 S.W.3d 448, 452 (citing Singletary v. Singletary , 2013 Ark. 506, at 10, 431 S.W.3d 234, 240-41 ).

Id.

Id.

Crittenden Cty. v. Davis , 2013 Ark. App. 655, at 8, 430 S.W.3d 172, 178 (citing Found. Telecomm., Inc. v. Moe Studio, Inc. , 341 Ark. 231, 16 S.W.3d 531 (2000) ).

Id. at 9, 430 S.W.3d at 178 (citing Found. Telecomm. Inc., supra ).

Id. (citing Seidenstricker Farms v. Doss , 372 Ark. 72, 270 S.W.3d 842 (2008) ).

Id. (citing Rector-Phillips-Morse, Inc. v. Vroman , 253 Ark. 750, 489 S.W.2d 1 (1973) ).

The A & B Coverage had "eroding limits" in which the costs of defending the claim were subtracted from the total amount permitted under the coverage.

PC Scale, Inc. v. Roll Off Servs., Inc. , 2010 Ark. App. 745, at 5, 379 S.W.3d 649, 652-53 (citing Hot Spring Cty. Med. Ctr. v. Ark. Radiology Affiliates, P.A. , 103 Ark. App. 252, 288 S.W.3d 676 (2008) ; Cal. Civ. Code §§ 1636, 1638, and 1639 (Deering 2005)).